(No. 22685.—■■■■■■■■)

THE BRADLEY SUPPLY COMPANY *et al.* Appellees, *vs.* KNOWLTON L. AMES, JR., Director of Finance, Appellant.

*Opinion filed December 20, 1934—Rehearing denied Feb. 8, 1935.*

OTTO KERNER, Attorney General, (MONTGOMERY S. WINNING, and JAMES G. SKINNER, of counsel,) for appellant.

ASHCRAFT & ASHCRAFT, (CARROLL J. LORD, of counsel,) for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The defendant, (appellant,) Knowlton L. Ames, Jr., Director of Finance of the State of Illinois, has appealed from a decree of the superior court of Cook county restraining him from enforcing against the plaintiffs (appellees) "An act in relation to a tax upon persons engaged in the business of selling tangible personal property to purchasers for use or consumption," approved June 28, 1933, effective July 1, 1933, known as the "Retailers' Occupation Tax act," and special rules 6 and 23 promulgated by the Department of Finance in its administration of that act.

The amended complaint alleges that the plaintiffs are severally engaged in the business of selling plumbing and heating supplies to plumbing and heating contractors. The heating supplies consist of boilers and radiators and the necessary accessories, such as steam and water pipes and valves and fittings. The plumbing supplies consist of bathtubs, lavatories, urinals, closet combinations, kitchen sinks, laundry tubs and necessary accessories, such as plumbing brass goods, water pipes, valves, water-pipe fittings, soil pipes and soil-pipe fittings, and hot water heaters, with their necessary accessories. It further alleges that upon the sale by plaintiffs to the contractors, credit is extended by them to the contractors alone, and the supplies are delivered at the time and place designated by them. Some of the articles sold are, at the direction of the contractors, delivered at locations where buildings are being constructed or repaired and other deliveries are made at the contractors' places of business. After the plumbing supplies have been delivered the respective plaintiffs have no right of possession or control over them and title to the supplies passes from the vendor to the contractor. Plaintiffs have no contractual relations with the owners of the premises. In most instances the contractors have, prior to the time they purchase the supplies, entered into contracts with the owners

of the premises by which they have agreed to furnish and install in the buildings of the owners certain specified heating and plumbing supplies for fixed sums of money. In arriving at the prices to be charged for supplying and installing the equipment, the contractors or sub-contractors add to the cost of the supplies purchased from the plaintiffs a profit of from ten to twenty-five per cent. They also add the cost of labor, and in most instances they add a further profit upon the contract as a whole. The owner pays the contractor and not the plaintiffs. Upon the installation of the heating and plumbing equipment in a building the owner acquires title thereto from the contractor and not from the plaintiff who sold it to the contractor. The articles sold by plaintiffs retain the form in which they were sold, after they are installed. The amended complaint further alleges that plaintiffs sell heating and plumbing supplies to contractors who do not intend to install them in buildings, but who, instead, sell the supplies in their shops. The Department of Finance has not attempted to include these receipts in computing the tax to be paid by the plaintiffs.

Plaintiffs contend that special rule 6 is in conflict with the express provisions of section 1 of the Retailers' Occupation Tax act, in that it seeks to impose a tax upon the business of selling tangible personal property, which sales do not constitute "sales at retail" as defined by that section, and that these sales of tangible personal property are not made "for use or consumption" within the meaning of the act. They also contend that as to this merchandise there are re-sales for use or consumption which except their business from the act. They say that these rules are ambiguous and uncertain and therefore void. As to special rule 23 plaintiffs say that it is void, in that it compels them to secure certificates of re-sale from plumbing and heating contractors when they sell to them.

The rules objected to are as follows:

"Special Rule No. 6—*Contractors*. A clear distinction must be made between contracts to repair, renovate, construct, re-construct or improve *real* property, and contracts to repair, renovate, construct or re-construct tangible *personal* property.

"Where a contract is entered into to repair, renovate, construct, re-construct or improve real property, such as roads, bridges or buildings, persons selling construction materials or other tangible personal property for use by the contractor in connection with the completion of his contract are making the final sales of such tangible personal property, with respect to which they become liable for retailers' occupation tax. The contractor's receipts from the repair, renovation, construction, re-construction or improvement of real property are not included within the Retailers' Occupation Tax act. It is immaterial whether or not the contractor itemizes various items of tangible personal property used in connection with the performance of the contract in arriving at the total contract price, or whether the contract price is computed on a 'time and materials,' 'fixed fee,' 'cost-plus,' or other similar basis. The determining factor is that the contractor has contracted to repair, renovate, construct, re-construct or improve real property and not tangible personal property, and hence does not come within the purview of the act. This ruling applies equally to sub-contractors who enter into contracts with general contractors, under which they contract to repair, renovate, construct, re-construct or improve real property, sales of tangible personal property to sub-contractors constituting sales at retail.

"Contractors who may enter into contracts of this nature may include such persons as building, electrical, plumbing, heating, painting, decorating, ventilating, paper-hanging, sheet-metal, bridge, road, landscape or roofing contractors, with respect to each of which occupations these

statements apply. But in the event that any such persons engage in the business of selling construction materials or other tangible personal property through shops or otherwise, they become liable for tax with respect to receipts from such sales.

"A contractor may in certain instances himself fabricate part or all of the articles which he uses in construction work. For example, a sheet-metal contractor may partly or wholly manufacture roofing, cornices, gutter pipe, furnace pipe, furnaces, ventilation ducts or other such items from sheet metal which he purchases, and use these articles pursuant to a contract for the construction or improvement of real property. In this instance the sale of sheet metal to such contractor constitutes a sale at retail within the act. This is true irrespective of whether such articles so fabricated are used in the alteration, repair or re-construction of an old building or are used in new construction work.

"On the other hand, where a contract is entered into to construct or manufacture and sell tangible personal property, such as furniture, machinery or office equipment, the contractor becomes liable for the tax measured by two per cent of his entire gross receipts from the transaction. The act specifically states that there shall be no deduction from selling prices or from gross receipts on account of cost of the property sold, the cost of the materials used, labor or service cost, or any other expense whatever. Persons selling materials to such contractors in these instances make sales for purposes of re-sale, which are not within the act."

"Special Rule No. 23—*Certificate of Re-sale.* Sellers of tangible personal property must determine, when sales are made, whether the buyer purchases goods for use or consumption or for purposes of re-sale. The burden of proof is upon the seller to determine that a sale of tangible personal property was not made at retail. When in doubt, the seller should take for his protection a certificate of re-sale from the buyer.

"No rigid form of certificate is prescribed, but it is suggested that the following legend, (or its substantial equivalent,) signed by the purchaser, appear upon all invoices tendered to the buyer as well as upon duplicate copies thereof retained by the seller. This will constitute *prima facie* evidence to the Department of Finance that goods were sold for re-sale:

" *'Certificate of Re-sale.*

" 'The undersigned hereby certifies that the property described in this invoice was purchased for the purpose of re-sale as tangible personal property.
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Signature of Purchaser (or authorized agent)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
Address of Purchaser.'

"In instances where the nature of the purchaser's business is primarily to purchase for re-sale, and it is difficult or impossible for him to determine at time of purchase whether the specific tangible personal property purchased will be re-sold in whole or in part, the seller will be justified in demanding a certificate that the entire amount of the purchase is for re-sale. But the purchaser will be required to pay the tax based on gross receipts as to the amount of the fair selling price of such tangible personal property as he may subsequently consume."

The motion to dismiss the amended complaint was overruled. Defendant elected to stand by his motion. The amended complaint was taken as confessed, and the court granted the injunction as prayed. Defendant has perfected this appeal.

The question of law presented by this case is whether under the admitted facts plaintiffs must pay the retailers' occupation tax. Defendant contends that they are liable for the tax because the act imposes a tax upon persons engaged in the business of making the last sale of tangible personal property before use or consumption. He insists that the plumbing contractor "uses" the supplies within

the meaning of the act, and that the act of attaching the personal property to real estate deprives the personalty of its character as such so as to deprive the transaction of the character of a sale, because, he says, title passes by accession and not by sale. Plaintiffs contend that since a "sale at retail" is defined by section 1 of the act as "any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for re-sale in any form as tangible personal property, for a valuable consideration," a technical sale is not contemplated by the legislature, and that the transfer of title from the contractor to the owner of the land is a transfer that is within the act. They insist that the contractor, alone, is liable for the tax. They also urge that the use which a contractor makes of the plumbing and heating supplies is not the use contemplated by the act.

Section 2 of the act imposes a tax upon "persons engaged in the business of selling tangible personal property at retail in this State." In construing a statute we are guided by certain rules in determining the legislative intent. The power to tax is the highest attribute of sovereignty. By it money or property of the individual is taken for public use. It is everywhere held, therefore, that taxing statutes must be construed strictly. (*People* v. *Chicago and Eastern Illinois Railway Co.* 314 Ill. 596, 599.) However, "strict construction" is not a precise but a relative term. It is not the exact converse of "liberal construction," for it does not consist in giving words the narrowest meaning of which they are susceptible. It is not violated by permitting words of the statute to have their full meaning. (*Biffer* v. *City of Chicago*, 278 Ill. 562, 571; 2 Lewis' Sutherland on Stat. Const. (2d ed.) sec. 518.) Where words have more than one meaning and are used in a statute they should be given that meaning which will comport with the usual and popular meaning attached to the words employed. *Stuart* v. *Hamilton,* 66 Ill. 253, 255.

If the transfer of title to the supplies *sub judice* from the contractor to the owner of the real estate is a "sale at retail" within the meaning of the act, previous vendors are excluded from the act. The contractor is liable because he, and not the plaintiffs, makes the sale for use or consumption. Defendant contends that the transfer of title contemplated by the act is a technical sale of personal property. A sale is defined in the Uniform Sales act as "an agreement whereby the seller transfers the property in goods to a buyer for a consideration called the price." It is admitted that the transactions between plaintiffs and the contractors are sales.

Defendant contends that the attaching of the plumbing and heating supplies under a contract with the owner is not a sale but that title passes by accession and that the supplies become real property. He relies upon *Raff Co.* v. *Murphy*, 147 Atl. (Conn.) 709, which held that a contract to do certain plumbing and electrical work and to furnish materials therefor was not a sale within the meaning of the Statute of Frauds so that it had to be in writing. He also relies on *Steiger Terra Cotta and Pottery Works* v. *City of Sonoma*, 100 Pac. (Cal.) 714, where it was held that a contract to furnish and set on a tile roof was a contract for work and labor and not of sale, and that replevin would lie until the tile were installed on the roof. Benjamin on Sales (7th ed. sec. 108,) also says such contracts are for work or labor and not sales of personalty. We agree with these rules and with the contention that the materials furnished become fixtures when attached to the realty and thus lose their identity as personal property; also that a mechanic's lien can be claimed for the value of the improvements so made. (*Fehr Construction Co.* v. *Postl System*, 288 Ill. 634; *Fifield* v. *Farmers' Nat. Bank*, 148 id. 163, 169; *Sword* v. *Low*, 122 id. 487, 496.) The question before us is not whether the transaction between the contractors and owners of land is a sale of personalty

as that term is defined at common law, in the decisions of courts or in the Uniform Sales act, but whether it is a transfer of tangible personal property to the purchaser for use or consumption and not for re-sale within the meaning of the Retailers' Occupation Tax act. The definition of a "sale at retail" as "any transfer of the ownership of, or title to, tangible personal property," is broad enough to cover the transfer of title made by a contractor who attaches tangible personal property to real estate in accordance with a contract. It is clearly a transfer of title for a valuable consideration.

Plaintiffs are not liable to pay the tax for another reason. The business of selling plumbing and heating supplies to contractors who intend to install them in a building or attach them to realty is not the occupation intended to be taxed by the legislature. These are not transfers to purchasers for use or consumption. The terms "use" and "consumption" have an ordinary or popular meaning. "Use" means a long-continued possession and employment of a thing to the purposes for which it is adapted, as distinguished from a possession and employment that is merely temporary or occasional. Webster's Dictionary defines the word "use" as an act of employing or state of being employed; to convert to one's service; to employ. (*Treolo* v. *Auto Insurance Underwriters,* 348 Ill. 93.) It is true that in one sense of the word the contractor does use the supplies in fulfilling his contract, but in the same sense a merchant who sells an article over the counter to a customer would be a user. The user or consumer contemplated by the statute is the ultimate user or consumer who will use the heating and plumbing in his house as long as it lasts or until he desires to do away with it.

In support of defendant's contention that the sale contemplated by the act is the last sale before use or consumption, stress is placed upon the words "and not for re-sale" in the definition of a "sale at retail." These words must

be considered in connection with the other words of the definition—*i. e.,* in the sense of "any transfer"—and not as intending a sale of personalty as ordinarily defined.

We need not consider the power of the Department of Finance to require the seller to procure from the purchaser a certificate of re-sale in order to avoid paying the tax, because plaintiffs are not within the Retailers' Occupation Tax act. Since it is beyond the power of the Department of Finance to collect the tax, rules made to administer its collection are of no force, and we do not consider what power defendant may have to make rules.

For the reasons stated in this opinion the decree of the chancellor is correct, and it is affirmed.

*Decree affirmed.*