## WESTERN LEATHER & FINDING CO. v. STATE TAX COMMISSION OF UTAH.

No. 5641.   Decided August 27, 1935.   [48 P. (2d) 526.]

*Badger, Rich & Rich,* of Salt Lake City, for plaintiff.

*Ned Warnock,* of Salt Lake City, for defendant.

ELIAS HANSEN, Chief Justice.

This cause is before us for review on a statement of facts agreed to by the parties litigant. The facts so agreed to which we deem material to the questions presented are: The plaintiff is, and at the time of this controversy was, a Utah corporation engaged in the sale of leather and shoe findings either for resale in the same form or for use in the repair of old or used shoes. Between May 31, 1933, and May 31, 1934, plaintiff company sold within this state to shoe repairers operating in the state leather and shoe findings of the value and agreed price of $58,360.94. Plaintiff paid a sales tax on sales made by it to shoe shiners and hat cleaners, but denied liability for the payment of the sales tax on the materials sold to shoe repairers. Contrary to plaintiff's contention, the defendant Tax Commission found that plaintiff was liable for the payment of a sales tax upon such leather and shoe findings as were sold to shoe repairers and accordingly assessed plaintiff with a sales tax thereon. According to the stipulated facts, it is a custom with shoe re-

pairers within the state not to make a separate charge for materials used and the labor performed in the repairing of shoes. In the average repair job the cost of materials used is about 30 per cent and the labor 70 per cent of the total charge.

Pursuant to the provisions of Laws Utah 1933, chap. 63, § 14, plaintiff has brought the matter to this court for review. It contends the defendant Tax Commission was in error in its order directing the payment of the tax. The Tax Commission contends to the contrary.

The act here brought in question is Laws Utah 1933, chap. 63, as amended by Laws Utah 1933, Second Special Session, chap. 20. It is there, among other things, provided:

"4. From and after the effective date of this act there is hereby levied and there shall be collected and paid:

"(a) A tax upon every retail sale of tangible personal property made within the state of Utah equivalent to two (2) per cent of the purchase price paid or charged. * * *" Section 4, as amended by Laws 1933, 2d· Sp. Sess. c. 20, § 1.

"2. * * * (c) The term 'wholesaler' means a person doing a regularly organized wholesale or jobbing business, and known to the trade as such and selling to retail merchants, jobbers, dealers or other wholesalers, for the purpose of resale;

"(d) The term 'wholesale sale' means a sale of tangible personal property by wholesalers to retail merchants, jobbers, dealers or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale;

"(e) The term 'retailer' means a person doing a regularly organized retail business in tangible personal property, known to the trade and public as such and selling only to the user or consumer and not for resale. 'Retail sale' includes all sales made within the state of tangible personal property except wholesale sales.

"(f) Each purchase of tangible personal property or product made by a person engaged in the business of manufacturing, compounding for sale, profit or use, any article, substance or commodity which enters into and becomes an ingredient or component part of the tangible personal property or product which he manufactures or compounds or the container, label, or the shipping case thereof shall

be deemed a wholesale sale and shall be exempt from taxation under this act." Section 2, as amended by Laws 1933, 2d Sp. Sess., c. 20, § 1.

"20. The administration of this act is vested in and shall be exercised by the state tax commission which may prescribe forms and rules and regulations in conformity with this act for the making of returns and for the ascertainment, assessment and collection of the taxes imposed hereunder."

It is urged on behalf of the commission that in doubtful cases the ruling of the State Tax Commission, in determining whose duty it is to pay the sales tax, should not be interfered with by the courts. When there is a dispute as to the facts, this court should not lightly overturn the commission's findings as to the facts. However, the act provides that the review by this court of the decision of the Tax Commission may be of both questions of law and of facts. Laws Utah 1933, c 63, § 14. The power vested in the commission to prescribe rules and regulations for making returns for ascertaining assessment and collection of the tax imposed by the act does not vest in the commission any discretion whatsoever in the matter of requiring the payment of a sales tax by any one other than such as are designated in the act. It is true that an administrative body within prescribed limits, and when authorized by the lawmaking power, may make rules and regulations calculated to carry into effect the expressed legislative intention. Under our State Constitution the legislative power of the state shall be vested:

"1. In a Senate and House of Representatives, which shall be designated the Legislature of the State of Utah.

"2. In the people of the State of Utah, as hereinafter stated." Constitution of Utah, art. 6, § 1.

The Legislature is not permitted to abdicate or transfer to others the essential legislative function with which it is thus vested. The imposition of a tax and the designation of those

who must pay the same is such an essential legislative function as may not be transferred to others. The act under review, however, is not open to the objection that the Legislature by the act attempted to transfer its authority to levy taxes and designate the persons who are required to pay the same to the State Tax Commission. The commission is empowered merely to make rules and regulations, etc., in conformity with the act. It will be noted that "wholesalers" as defined by the act are exempt from the payment of the tax except when a sale is made by a wholesaler directly to a consumer; that is when the property is not to be resold. The facts in this case are stipulated, and, therefore, are not in dispute. Thus the sole question presented for determination is not one of fact but one of law. Plaintiff is engaged in the wholesale business. The sales here involved are wholesale sales unless it may be said that shoe repairers are consumers of the materials which are used in the mending and repairing of shoes. If the charge made for repairing shoes constitutes a sale by the shoe repairer to the owner of the shoes of the materials used in the repair jobs, then and in such case under the express provisions of the act the plaintiff is not liable for the payment of the tax here sought to be imposed upon it. The word "consume" is thus defined in Webster's New International Dictionary, Second Edition:

"1. To destroy the substance of, esp. by fire;—formerly and still figuratively used of any destructive or wasting process, as evaporation, decomposition, and disease. 2. To spend wastefully; hence, to use up; expend; waste. 3. To use up (time) whether wastefully or usefully; as, hours consumed in reading. 4. To eat or drink up (food); devour. 5. To waste or burn away; to perish. Syn.—Absorb, spend, squander, dissipate."

A person who places soles, heels, and patches on old worn shoes does not consume material so used within the definitions above quoted or within the meaning of the statute. The consumer is the person who wears the shoes after they are repaired. If there were any doubt about the legislative in-

tention as to whose duty it is to pay the sales tax, such doubt is removed by the provisions of subsection (f) of section 2 of the act above quoted. Under the provisions of such subsection it is clear that a sale of leather or other material to be used in the manufacture of new shoes is not subject to the tax. The mere fact that the leather and other materials here in question were used to make only a part of a shoe does not change the nature of the transaction. A "sale of goods" is defined as "an agreement whereby the seller transfers the property in goods to the buyer for a consideration called the price." R. S. Utah 1933, 81-1-1. A sale is in effect so defined in the act here involved. When a shoe repairer delivers the repaired shoes to the owner thereof and receives payment therefor, the title to the materials used in the repair job passes to the owner. The amount paid includes the price of the materials used. Such a transaction possesses all of the elements of a sale of the materials used in the repair job.

It is urged on behalf of the commission that shoe repairers should not be requested to pay a sales tax on the materials used to repair shoes because there is a custom among them not to make separate charges for services rendered and for materials furnished in repairing shoes. The act does not make such fact, nor the fact, if it be a fact, that it is difficult for shoe repairers to make separate charges for labor performed and materials furnished in repairing shoes, the basis for shifting the duty of collecting and paying the sales tax on to others. Much is said in the briefs of counsel as to the orders made by the commission affecting who shall pay the tax in other transactions somewhat analogous to the case in hand. The rulings made by the commission as to who shall pay the tax in the transactions mentioned are not of controlling importance in the instant case. Such rulings may, or may not, be open to the objections urged against the ruling here brought in question. Our duty is to give effect to the legislative intention as expressed in the language used in the act.

The order complained of should be, and accordingly is, reversed. This cause is remanded to the State Tax Commission of the State of Utah, with directions to vacate the order here reviewed and for such other and further proceedings not inconsistent with the views here expressed as may be deemed proper. Costs to plaintiff.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, Justice (concurring specially).

Whether the sales described in the prevailing opinion were sales by wholesale, or whether sales to the consumer, as meant by the act, is the real question at issue in this case. Section 2, chap. 63, Laws Utah 1933, as amended by Laws 1933, Second Special Session c. 20, § 1, provides as follows:

"(c) The term 'wholesaler' means a person doing a regularly organized wholesale or jobbing business, and known to the trade as such and selling to retail merchants, jobbers, dealers or other wholesalers, for the purpose of resale;

"(d) The term 'wholesale sale' means a sale of tangible personal property by wholesalers to retail merchants, jobbers, dealers or other wholesalers for resale and does not include a sale by wholesalers to users or consumers, not for resale;

"(e) The term 'retailer' means a person doing a regularly organized retail business in tangible personal property, known to the trade and public as such and selling only to the user or consumer and not for resale. 'Retail sale' includes all sales made within the state of tangible personal property except wholesale sales.

It can be seen from an examination of these sections that they rather contemplated articles which were sold through wholesalers to persons for resale to those who actually used them, and contemplated a retailer as someone who sold goods from stock as such and not the person who furnishes material in connection with repairs.

The problem can be best approached by assuming extreme cases on both ends of the gamut. When a barber shaves a person, the lather and soap and soothing lotion which go

upon the customer are mere incidentals as compared to the service performed. It is likewise true of shoe shiners. These illustrate cases on one end of the gamut. Where a merchant sells readymade clothing and in connection therewith does alterations and perhaps furnishes materials, such as a small piece of cloth or thread, we have a case in which the services are merely incidental to the sale. Other cases lie in between. The automobile repair shop furnishes parts as well as services. The parts may at times amount to more than the services and other times vice versa. Some trades have long customarily separated their charges for services and parts. The automobile repair trade is an example. There it is quite easy to make the separation because the parts are usually very definite. In the shoe repairing industry, on the other hand, the practice has been just the opposite. A gross charge is made without separation. Indeed, it might be difficult to make the separation in this trade because of the difficulty of determining just how much leather cut from a larger piece goes into each job.

The commission is entitled to promulgate rules and regulations for the practical and proper administration of the act. Such cannot be against the teeth of the law. They can serve to fill up the details as long as they do not run counter to the express will of the Legislature. If the ruling requiring the leather and findings companies to collect the tax from the repairmen is contrary to the method of assessment and collection of the sales tax laid down by the Legislature, such regulation is invalid. If, on the other hand, there is a reasonable question about it or it is certain that it is harmonious with the provisions laid down by the Legislature, then it should be upheld. Considerations of practicality may be taken into account. Where two constructions of an act giving administrative powers to a commission are permissible, that construction which comports more practically with the actual execution and administration of the law by the commission should be adopted. The commission has the duty of executing and administering the law. The practical

difficulties in accomplishing that should be recognized by the courts. The court, sitting purely in an atmosphere of abstract, argument and reasoning without recognizing the realities of the situation under which the commission works, might adhere to a strictly logical construction of the provisions of an act which would make it entirely unworkable. From the examples on either end of the gamut given above we can see that certain practical concessions must be made by the commission in the construction of the law. It could not possibly require a separation of materials used in connection with services of barbers, shoe shiners, or shoe repairmen where they, for instance, used only shaving soap and lotion (although these are really consumed) a piece of thread to sew up a shoe, or polish to shine the shoes (also really consumed). Likewise it is the same with tailors repairing clothes. Also with some materials furnished by cleaners and dyers (perhaps also consumed). Theoretically and perhaps logically those service industries may effect a sale to the patron of tangible articles which they use in connection with their services. If so, the value of the articles sold and contributed in connection with the services are so incidental and so proportionately small as compared to the value of the services that for practical reasons they cannot be considered as a sale. On the other hand, when an article is sold and the servicing of the same incidental to the sale is such a small part of the price of the whole, such value of the services cannot be subtracted from the sale price. Where to draw the line is questionable, but unless this court is convinced that the commission erred in drawing the line where it did, this court should not interfere with or upset its rulings.

It is stipulated that the value of the property which is applied to the repair of the shoes amounts to about 30 per cent of the entire price. I concur with the prevailing opinion on the ground that the amount of goods which goes into a shoe repair job as compared with the value of the whole job is apparently not a mere incidental of the repair job. It

appears to be a very substantial part of the cost of the whole job. If the repairing industry would come under the category of the clothing repairer or others where the amount of goods used in repair was a mere trifle compared to the labor, under the maxim de minimis non curat lex, the commission would be justified in treating the shoe repairer as the end purchaser in the course of trade. Under the evidence it cannot do this. All along the line from the production of raw materials to the finished product, the fabrication of goods entails the working in of materials which cannot be said to be used or consumed until they reach the person who is actually using, consuming, or wearing the totally assembled article. The sales tax applies to the sale of the end product; not only to the sale of the end product, but to the sale of the end product at retail.

In the case of shoe repairers, Illinois, Iowa, Missouri, New York, Oklahoma, and Washington seem to have taken the view that our own Tax Commission has taken. On the other hand, California, Colorado, Michigan, Idaho, and Ohio seem to have taken the view contended for by the plaintiff.

For reasons stated herein, I concur with the results of the prevailing opinion.