[Civil No. 3850. Filed October 9, 1937.]

[72 Pac. (2d) 573.]

THAD M. MOORE, FRANK LUKE and D. C. O'NEIL, as Members of and Constituting the State Tax Commission of Arizona, and FRANK E. FRASER, as Director of the Sales Tax Division of the State Tax Commission of Arizona, Appellants, v. PLEASANT HASLER CONSTRUCTION COMPANY, a Corporation, Appellee.

318

Mr. Joe Conway, Attorney General, Mr. J. B. Sumter, his Special Assistant, and Mr. W. E. Polley, his Assistant, for Appellants.

Messrs. Kibbey, Bennett, Gust and Smith & Rosenfeld, for Appellee.

ROSS, J.—This action was brought by the Pleasant Hasler Construction Company against the State Tax Commission and Frank E. Fraser as director of the Sales Tax Division to secure a declaratory judgment as to the proper construction of some of the provisions of chapter 77, Laws of 1935, known as the "excise revenue act of 1935." The plaintiff, before bringing the action, had contracted with the State Highway Department to build for the state of Arizona two steel bridges and approaches on the state's right of way known as highway No. 60, agreeing to furnish all labor and materials, for which the state had agreed to pay it a lump sum. The State Tax Commission, whose duty it is to collect the taxes due the state under the said Excise Revenue Act, had demanded of the plaintiff that it pay a tax of 2 per cent. on the gross contract price it was to receive for constructing said bridges and approaches, it being its contention that the transaction constitutes a sale at retail of the personal property, such as steel, cement, sand and gravel, corrugated metal pipe, etc., entering into the construction of the bridges and taxable under the law.

Plaintiff, contending under its contract with the state it was not a seller at retail of such tangible personal property to the state, but was itself the ultimate consumer, brought this action to secure the court's determination of the question. The respective contentions were presented by the plaintiff's complaint and the defendants' answer. The court sustained a demurrer to defendants' answer and, the latter having elected to stand thereon and not to amend, judgment was entered in favor of plaintiff, from which judgment the defendants have appealed.

The question is a new one in this jurisdiction. It involves a construction of the pertinent provisions of said chapter 77. This chapter by its terms imposes

an annual privilege tax upon the business activities of both natural and artificial persons in the following words (in article 2):

"Sec. 2. *Imposition of the Tax.* From and after the effective date of this act, there is hereby levied and shall be collected by the tax commission . . . annual privilege taxes measured by the amount or volume of business done by the persons on account of their business activities, and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be, in accordance with the following schedule: . . .

"(d) At an amount equal to two per cent. of the gross proceeds of sales or gross income from the business upon every person engaging or continuing within this state in the following businesses:

"1. Selling any tangible personal property whatsoever at retail, except bonds and stock."

██ Whether appellee should pay a 2 per cent. tax on the contract price of the bridges is the issue. It should if the materials, such as cement, steel, nails, etc., were "sold," as that word is used in the act, to the state for consumption. It should not if appellee purchased said materials for consumption itself and not for resale. In the latter case it would pay no tax, and since, as we know from common knowledge, such materials are not produced or manufactured in this state, or at most only a small portion of them, but are shipped in from the outside, no tax whatever would be paid, the sale to the contractor not being made in the state.

██ The following definitions will be of aid in determining the question:

"(d) The term 'sale' or 'sales' includes the exchange of properties as well as the sale thereof for money, every closed transaction constituting a sale. . . .

"(f) The term 'gross income' means the gross receipts of a taxpayer derived from trades, business, commerce or sales and the value proceeding or accruing from the sale of tangible personal property, or service, or both, and without any deduction on account of losses.

"(g) The term 'business' when used in this article shall include all activities or acts engaged in (personal and corporate), or caused to be engaged in with the object of gain, benefit or advantage either direct or indirect, but shall not include casual activities or sales.

"(h) The term 'gross proceeds of sales' means the value proceeding or accruing from the sale of tangible personal property without any deduction on account of the cost of property sold, expenses of any kind, or losses." Section 1, art. 2.

The trial court, when it sustained the demurrer to appellants' answer, accepted appellee's construction of the law, that is, that a building or construction contract wherein and whereby the contractor agrees to furnish all labor and material and to build or erect on the premises of the owner a completed bridge or structure for a lump sum, sells the owner the finished bridge or structure and not the tangible personal property put into it. Otherwise stated, that while the concrete, steel, pipe, etc., are furnished by the contractor they are not sold within the meaning of the law to the owner, the only thing sold being the finished structure. This conclusion is reached by this course of reasoning: Under the Uniform Sales Act (sec. 2805, Rev. Code of 1928), and under the common law (23 R. C. L. 1186, § 2), the definition of a sale being practically the same in both, "A sale of goods is an agreement whereby the seller transfers the property in the goods to the buyer for a consideration called the price" (sec. 2805, *supra*), and since no price was put upon the materials entering into the bridges, there was no *sale* of such materials within

the meaning of that word as used in the Uniform Sales Act or the common law.

It is also said that the owner acquires the title to the materials by accession; that the materials remain the property of the contractor until they are affixed to the realty, and that the title does not pass until they become fixtures; that is, that the materials change their character from tangible personal property to realty before the owner acquires title thereto and consequently there is no sale of tangible personal property.

Appellee also contends that it is the ultimate consumer.

There are cases both *pro* and *con* on the vital questions, but under statutes, we believe, differing from ours in many and perhaps vital respects. *State* v. *Christhilf,* 170 Md. 586, 185 Atl. 456, 457, sustains the views of appellee. It was there held that the contractor furnishing materials and labor for a lump sum in a road construction or building was the ultimate consumer of the materials entering therein. Also that the materials entering such structures were not sold to the owner as tangible personal property but that the owner became such by accession. The court said:

"The state and *amici curiae* in their briefs urge this court to adopt the construction put on the Illinois Emergency Tax Act (Smith-Hurd Ann. St., c. 120, § 440 et seq.) in *Bradley Supply Company* v. *Ames,* 359 Ill. 162, 194 N. E. 272, 275, where it was said: 'The definition of a "sale at retail" as "any transfer of the ownership of, or title to, tangible personal property," is broad enough to cover the transfer of title made by a contractor who attaches tangible personal property to real estate in accordance with a contract. It is clearly a transfer of title for a valuable consideration.' Much as we respect that court, we cannot agree with the view that there is a transfer of title to so many feet of lumber, kegs of nails, thou-

sands of brick, perches of stone, cubic yards of concrete, or other items of materials entering into a lump sum contract, for a complete job or structure, which, when erected on the customer's land, is as much real property as the land itself and is by no sort of definition or reasoning 'tangible personal property.' *State v. J. Watts Kearny & Sons,* 181 La. 554, 160 So. 77; 23 R. C. L. 1233, Sales, § 49.

"It is the contractor or builder who is the ultimate user or consumer of the materials which in one of these cases are converted and fabricated into a building and in the other into a road."

*State* v. *J. Watts Kearny & Sons,* 181 La. 554, 160 So. 77, 79, was a case involving a different kind of question, but in the course of the opinion the court described the nature of the contractor's relation to such a transaction as follows:

"His undertaking is to deliver to his obligee some work or edifice or structure, the construction of which requires the application of skill and labor to these materials so that, when he finishes his task, the materials purchased are no longer to be distinguished, but something different has been wrought from their use and union. The contractor has not resold but has consumed the materials. Sales to contractors are sales to consumers, and, for this very reason, the Legislature did not include contractors and subcontractors in the term 'dealers for re-sale,' as used in section 7 of Act No. 205 of 1924, but has placed them in an entirely different classification in section 24 of the act."

The statutes construed in these cases were excise revenue acts, as here.

The appellants have cited us to two cases that hold the contractor is not the consumer of the materials entering into the structure, but that he is the seller of such materials to the owner of the structure and taxable under excise revenue acts levying a tax on retail sales of tangibles to the final consumer. Such is

the holding in *Bradley Supply Co.* v. *Ames*, 359 Ill. 162, 194 N. E. 272, 275. In this case the attempt was made by the taxing authority to collect a retail tax from the seller of plumbing fixtures where the sale was to plumbing contractors who attached them to realty under a lump sum contract with the owner of such realty. The holding was that, since such a transaction was a transfer of tangible personal property by the contractor to the owner for use and consumption, the tax should be paid by the contractor and not by the dealer who sold the fixtures to the contractor. The court, after conceding that plumbing fixtures become a part of the realty for which liens might be claimed, said:

"The question before us is, not whether the transaction between the contractors and owners of land is a sale of personalty as that term is defined at common law in the decisions of courts or in the Uniform Sales Act, but whether it is a transfer of tangible personal property to the purchaser for use or consumption and not for re-sale within the meaning of the Retailers' Occupation Tax Act. The definition of a 'sale at retail' as 'any transfer of the ownership of, or title to, tangible personal property,' is broad enough to cover the transfer of title made by a contractor who attaches tangible personal property to real estate in accordance with a contract. It is clearly a transfer of title for a valuable consideration."

In *Wiseman* v. *Gillioz*, 192 Ark. 950, 96 S. W. (2d) 459, 461, it was held that contractors who contracted with the city of Fort Smith to build a dam, intake tower, etc., for the municipal water system, for a lump sum, furnishing all materials and labor, were the sellers of such materials at retail, the city of Fort Smith being the ultimate consumer thereof. The Arkansas statute (sec. 3, Sales Tax Act [Acts 1935, pp. 592, 593]) defines

" 'sale at retail' [to] mean any transaction, transfer, exchange, or barter by which is transferred for a consideration the ownership of any personal property, thing, commodity, and/or substance, and/or the furnishing or selling for a consideration any of the substances or things hereinafter designated and defined, when such transfer, exchange, or barter is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use, or for any other purpose than for resale."

The court in its opinion answers the contentions against the right to tax the contractor on materials entering into the structure, as follows:

"Of course, one would not say that the contractor sold the house, but unquestionably he sells the material that goes into the house. If one should contract to furnish the material and labor and build a house for the owner, he would necessarily estimate or calculate the value of the material furnished and the owner would have to pay for it. The contractor would sell this to the owner. The material would belong to the contractor before the contract was made, or he would purchase it from material furnishers. Our statute says that sale at retail means any transaction, transfer, exchange, or barter by which is transferred for a consideration the ownership of any personal property, thing, commodity, or substance, or the furnishing or selling for a consideration any of the substances and things, etc. If the contractor owned this material and sold it to the city of Fort Smith, will it be contended that it was not transferred to the city of Fort Smith for a consideration? And if it was so transferred, it is subject to the sales tax under our statute.

"It makes no difference that we would not say of a builder that he sold the house, or sold the lumber, shingles, or nails, but that is in fact what he does. It is just as much a sale of the material as it would be if the contractor would agree on the price of the material and labor separately.

"It seems to us that the only question is whether there was a transfer to the city for a consideration. If so, it comes within the terms of section 3 of the Sales Tax Law.

"If there was a transfer of ownership, as mentioned in section 3 of the act, there was a sale to the city upon which the tax must be paid, unless the appellees were entitled to exemption."

In *R. S. Blome Company et al.* v. *Ames et al.,* 365 Ill. 456, 6 N. E. (2d) 841, 842, the appellants were general and subcontractors, and it was their contention that they made no sales but rendered services and that the materials they furnished were only incidental to the services and that therefore they did not fall within the Excise Revenue Act. The court said:

"Appellants transfer title to all materials which they furnish to the owners of the real estate. It makes no difference whether such transfer be by sale or accession. The transfer named in the act is, 'any transfer of title to tangible personal property.' Appellants at no time acquire or transfer title to any interest in real estate. The real estate at all times is the real estate of the owners with whom appellants contract. It makes no difference that the moment the title to the personal property leaves appellants and vests in such owners of real estate, by operation of law it becomes, *eo instanti,* real instead of personal property. The fact remains that all the title the appellants transfer, whether by sale or accession, is title to personal property." This reasoning is conclusive and inescapable.

In *Western Leather & Finding Co.* v. *State Tax Com.,* 87 Utah 227, 48 Pac. (2d) 526, 530, being a case under the tangible personal property sales tax law of that state, it was held that a person who places soles, heels, and patches on old worn shoes is not the consumer but that the person who wears the shoes is; also that the delivery of the repaired shoes to the owner is a sale of the material used in the repairing

of the shoes. In a specially concurring opinion Mr. Justice WOLFE used this rather expressive language:

"All along the line from the production of raw materials to the finished product, the fabrication of goods entails the working in of materials which cannot be said to be used or consumed until they reach the person who is actually using, consuming, or wearing the totally assembled article. The sales tax applies to the sale of the end product; not only to the sale of the end product, but to the sale of the end product at retail."

In the course of his opinion he surmised that, where a person renders services and also furnishes materials, if the latter is but a trifle in value compared with the service, "under the maxim *de minimis non curat lex*, the commission would be justified in treating" the one rendering the service "as the end purchaser." He illustrates:

"When a barber shaves a person, the lather and soap and soothing lotion which go upon the customer are mere incidentals as compared to the service performed. It is likewise true of shoe shiners. These illustrate cases on one end of the gamut. Where a merchant sells ready-made clothing and in connection therewith does alterations and perhaps furnishes materials, such as a small piece of cloth or thread, we have a case in which the services are merely incidental to the sale. Other cases lie in between. The automobile repair shop furnishes parts as well as services. The parts may at times amount to more than the services and other times *vice versa*. Some trades have long customarily separated their charges for services and parts. The automobile repair trade is an example. There it is quite easy to make the separation because the parts are usually very definite. In the shoe repairing industry, on the other hand, the practice has been just the opposite. A gross charge is made without separation. Indeed, it might be difficult to make the separation in this trade because of the difficulty of determining just how

much leather cut from a larger piece goes into each job."

The law authorizes the Tax Commission to make rules and regulations for the administration of the Excise Revenue Act, and doubtless the commission thereunder would possess the power to take care of extreme cases. But we have here no such extreme case and, whether the tax be on the "gross income" or the "gross proceeds of sales," it should be in the latter against "the value proceeding or accruing from the sale of tangible personal property without any deduction on account of the cost of property sold, expenses of any kind, or losses" (sec. 1 (h), art. 2, *supra*), and in the former on such "value proceeding or accruing from the sale of tangible personal property, or service, or both, and without any deduction on account of losses" (sec. 1 (f), art. 2, *supra*).

With these differing views from courts of highest standing before us, we turn to a closer analysis of the provisions of our Excise Revenue Act. The tax of 2 per cent. provided for in article 2, section 2 (d), is on sales of any tangible personal property at retail, and a sale at retail is one of tangible personal property for consumption and not for resale. A sale, however, is any "closed transaction" the consideration for which is either money or exchange of property.

The definitions of "sale" and "sale at retail" in the statute (art. 2, § 1), when taken together, import a closed transaction wherein tangible personal property is transferred to the buyer for consumption and not for resale. The sale is not a sale under the common law. Any transfer of title may constitute a sale under these definitions. No separate price need be stated when several articles are included in the transfer as at common law. Every "closed transaction" is a sale. The words describing the sale that is taxable

and specifying who should pay the tax are as broad and comprehensive as in the Illinois and the Arkansas statutes quoted, *supra*.

The person selling to the consumer is the one who should pay the tax. The materials, such as cement, concrete, steel, etc., used by the contractor in fulfilling his contract, it does not seem to us are consumed by him. Webster defines "consumption" as the "Act or process of consuming; waste; decay; destruction; also, the using up of anything, as food, heat, or time."

The contractor may change the form of such materials but he does not waste or destroy or consume them. They become a part of the state's highways and will in the course of time decay and be worn out by the traveling public and the elements. The state, therefore, is the ultimate consumer. It does not purchase the materials for resale but the contractor does.

The definitions in the statute must be examined in connection with other language used by the legislature. For instance, the tax is to be "measured by the amount or volume of business done by the persons on account of their business activities, and in the amounts to be determined by the application of rates [two per cent. here] against values, gross proceeds of sales, or gross income, as the case may be." Section 2, art. 2, *supra*. The plaintiff's business is such that its taxes probably should be measured and assessed on the "gross income" and not on the "gross proceeds of sales." We say this because the contractor furnishes for the construction of the bridges both tangible personal property and *service*. All of the materials he puts into these structures is tangible personal property but, through the service he renders under his contract and as contemplated thereunder, such materials, in the process of fulfilling his contract, become incorporated into the completed structure and the property of the state.

The much-disputed question as to whether the contractor has sold to the owner the materials as tangible personal property, or whether the transfer of title is accomplished when the bridges are completed and a part of the soil, seems immaterial under our statute. The tax is measured by the ''value proceeding or accruing from the sale of tangible personal property, or service, or both.'' Section 1 (f), art. 2, *supra*. If in rendering service on the materials they are changed in form, shape, or texture to become a component part of the bridges, or if they are transmuted into a part of the owner's real estate during the process by reason of such *service,* we think under the statute the transaction is nonetheless a sale at retail of tangible personal property for consumption by the state and not for resale. It may not be a sale of the different materials as understood at common law because no separate price was fixed for each kind of material, as so much per pound for steel or cement, etc., and because the cost of labor and material is not segregated, but it would seem that under the Excise Revenue Act the transaction amounted to a sale at retail by the contractor to the owner. It was a ''closed transaction'' for which the contractor was paid by the state a money consideration.

The question should be ruled by the intention of the legislature, ascertained, if possible, from the language used in the act and the object sought to be accomplished. The title of the act reads:

''An Act relating to excise taxation, and to impose a license fee and a privilege tax upon the privilege of engaging in certain occupations and business; and declaring an emergency.''

Thus it is seen that the legislature evidently thought it was imposing the tax upon the privilege of engaging in certain occupations and business, and language

throughout the context, especially that used in defining the words and phrases employed, would indicate that the tax was to be upon the "volume of business" or "gross proceeds of sales" or "gross income" measured by sales.

The Excise Revenue Act lays a tax upon practically every business activity in the state, such as manufacturing, transportation, mining, utilities, communication, publishing, printing, restaurants, amusements, rentals, meat packing, etc. In section 28, article 2, thereof it exempts sales of gasoline, because under other provisions of law such sales are taxed, also common or contract motor carriers of passengers or property paying a tax under the provisions of chapter 10, section 2, Session Laws of 1933, First Special Session, and in section 1 (g), article 2, thereof casual activities or sales. In other words, these are the only articles and activities, apparently, that the legislature intended to exempt from paying a sales tax under the Excise Revenue Act of 1935. Of course, it is possible that it intended to favor contractors by not requiring that they pay a sales tax upon materials entering into buildings and structures, or that it inadvertently omitted them from the burden placed on all others, but it is difficult to come to that conclusion in view of the title of the act and the phraseology of the act.

█ That the tax should be laid upon what the article sells for seems conclusive. Thus it is provided in article 2, section 5, that any person engaged in manufacturing, baling, crating, or preparing for sale, etc., agricultural and horticultural products (section 2, subd. (a), par. 1), or in the business of mining, quarrying, smelting, or producing for sale, etc., as required in section 2, subdivision (c), paragraph 1, who sells the products of such business at retail,

shall pay the tax of 2 per cent. as provided in section 2 (d) of article 2. These persons are required to pay the retail tax on the finished product, without any deduction for labor or services when the product is sold to the consumer. Why should a contractor be exempted from the same duty?

Appellee in its brief says that, if this court holds the contractor amenable to the excise tax, it will compute the tax in its contract and collect it from the state. While no doubt the seller of property always adds the tax he is required to pay to the selling price and thus passes it on to the consumer, there is no rule of law requiring him to do this. It is the seller's duty, and not the consumer's, to pay the tax. But, even if the tax inevitably falls on the consumer, in this case upon the state, we are cited to no constitutional or other prohibition against its being levied and collected from the contractor. The legislature has named the different kinds of sales that are exempt from the excise sales tax and has not included contractors who sell property to the State Highway Commission. See *Arkansas State Highway Com.* v. *Wiseman,* 192 Ark. 873, 95 S. W. (2d) 557.

We conclude that the trial court erred and that the judgment should be vacated and the cause remanded, with directions that a new trial be had in accordance herewith. It is so ordered.

McALISTER, C. J., concurs.

LOCKWOOD, J., Dissenting.—This is an action to secure a declaratory judgment as to whether the plaintiff herein is subject to taxation under chapter 77, Laws of 1935, because of the fact that it contracted with the state of Arizona to build two steel bridges on the state highway, known as highway 60, agreeing

to furnish all labor and material for a fixed lump sum. Chapter 77, *supra,* is entitled:

"An Act relating to excise taxation, and to impose a license fee and a privilege tax upon the privilege of engaging in certain occupations and business; and declaring an emergency."

It is evident from the title and also from an examination of the body of the act that the tax referred to therein is not in any sense one on property, but is an excise tax exacted for the privilege of engaging in certain specified occupations and businesses. The first question, therefore, in determining whether a given individual or corporation must pay the tax, is to determine whether he or it is engaged in one of the businesses specified in the act as being subject to taxation. The only business of that class, which it is claimed the plaintiff is engaged in, is described in the act as follows: "1. Selling any tangible personal property whatsoever at retail, except bonds and stock." Article 2, § 2 (d) (1). The primary question for our consideration, therefore, is whether a corporation whose regular occupation, so far as the records show, 'is confined to erecting permanent structures such as bridges upon a state highway for a lump sum, is "engaging . . . in the following businesses: 1. Selling any tangible personal property whatsoever at retail, except bonds and stock." Article 2, § 2 (d) (1).

It is the general rule of statutory construction that words and phrases used in a statute are to be given their ordinary meaning, and are not to receive a strained or fanciful definition. It seems to me that to call a bridge, which is annexed to a public highway and, therefore, under every rule of law of which I am aware a part of the realty, "tangible personal property" is a self-evident misnomer. I am convinced

that if one were to ask the first hundred men he met on the street whether such a structure was "tangible personal property," he would either receive an unhesitating "no" for an answer, or would be asked incredulously as to what the "catch" was in the question.

The argument by which the majority apparently supports the conclusion that the plaintiff is engaged in the business of "selling tangible personal property at retail" is that, since the material which makes up the finished structure for which the state pays a lump sum was at one time personal property, the business of the corporation is the selling of tangible personal property.

No illustration that I can give will show the fallacy of such a construction, if we are to use the words in their ordinary meaning, better than a mere statement of the conclusion reached by the majority. If they are correct in their reasoning, and *will apply such reasoning consistently,* then every shoe repairer must pay the tax upon his entire income, unless the customer furnishes the shoe leather and laces for the repaired shoes. Barbers and cosmeticians must refrain, at their peril, from using any form of cosmetics upon their customers. Doctors may no longer use any drugs in the actual treatment of a patient, for drugs are certainly tangible personal property which are, for a consideration, incorporated (at least temporarily) in the body of the patient. Even shoeblacks must require the customer to furnish the paste, for certainly it is tangible personal property which passes into the possession of the customer when the shoes are shined. And the list might be lengthened indefinitely. Of course, I am well aware that the majority will probably decline to apply the rule consistently, and will state that there is a point at which the tangi-

ble property sold is so small in value in comparison with the services charged for that the rule of *de minimis non curat lex* applies, but this will require a careful analysis and separation of the tangible property used in almost every operation from the labor, with no definite criterion of where the line is crossed, except that a man's occupation is determined by the *value* of the tangible property sold rather than the *character* of the transaction, so that we will be compelled to return an arbitrary answer in each case which comes before us.

I am aware that there are cases which hold, under very similar circumstances with those of the present one, that a party is engaged in the business of selling tangible personal property, but on a careful reading it will appear that the courts therein have, doubtless unconsciously, fallen into the error of assuming that a mere incident, outside of the principal purpose and course of the business, fixes the character of the business. This, I am satisfied, is because these courts fail to keep constantly before them the fact that the tax imposed is not in any sense one upon the property disposed of or used in the business, but is a license tax for the privilege of doing a certain kind of business. The only connection that the value of the property used has with the tax is in determining, not the liability to taxation, but the amount of the tax—a very different thing.

The legislature, of course, might have made the business of contractor and builder subject to a license tax, but, had it so intended, it would seem that it would have specified that business as it did many other classes of business in addition to retail merchants.

I think that under the circumstances set forth in the complaint plaintiff is not engaged in the *business* of selling tangible personal property at retail, but in

the *business* of contracting and building, a very different thing, and that it, therefore, is not liable to the tax imposed in chapter 77, *supra*.