# UTAH CONCRETE PRODUCTS CORPORATION v. STATE TAX COMMISSION.

No. 6398.   Decided April 25, 1942.   (125 P. 2d 408.)

See 37 C. J. Licenses, sec. 77; 11 Amer. Jur., 910.

*Conway Ashton* and *Ball & Musser,* all of Salt Lake City, for plaintiffs.

*Alvin I. Smith, Grant A. Brown, David T. Lewis, Garfield O. Anderson,* and *Wayne Christoffersen,* all of Salt Lake City, for defendant.

WOLFE, Justice.

Review of a decision of the State Tax Commission holding plaintiffs liable for additional sums levied under the Emergency Revenue Act (Sales Tax Act) and the Use Tax Act.

Plaintiff, the Utah Concrete Products Corporation, and the plaintiff, the Utah Concrete Pipe Company, a copartnership, were, during the years 1937, 1938, and 1939, engaged in the manufacture of concrete pipe, cinder blocks and related concrete products. They were primarily engaged in selling these products to public highway and building contractors; a relatively small amount being sold directly for private use.

In 1940, the State Tax Commission notified the plaintiffs of an additional sales tax assessment for the years 1937, 1938, and 1939. Plaintiffs duly petitioned for a redetermination on the grounds that deductions were allowable on sales to contractors. On March 12, 1941, a joint hearing was held and subsequently the State Tax Commission rendered its decision denying said petition and finding the Utah Concrete Products Corporation and the Utah Concrete Pipe Company liable in the sum of $692.81 and $1,052.56 respectively. The plaintiffs have conceded and paid the sums of $13.92 and

$10.59 respectively. The remainder, being paid as required by law, is claimed to be an invalid tax assessment. Of such sums, ninety-eight per cent of the amount represents sales tax claimed on sales to contractors for use in public highway construction. The sum of $12.50 is claimed due from sales to contractors for use in private construction and $17 arises from the use by the plaintiff Utah Concrete Pipe Company of cinder blocks made by it at Provo, Utah, and used in the construction of its own office building in Salt Lake City, Utah.

Three questions are presented in the instant case for determination by this court:

First, are sales of products made by a manufacturer of building materials to contractors for use upon a private construction contract taxable under the Emergency Revenue Act of 1933 (Sales Tax Act) and its subsequent amendments?

Second, are sales of products made by a manufacturer of building materials to contractors for use upon a public construction contract taxable under the same act as amended?

Third, are building materials used by the manufacturer thereof for its own use subject to taxation under the Use Tax Act of 1937?

Taking the first two questions involving the Emergency Revenue Act (Sales Tax Act), first, we find its declared purpose to be

"a tax upon every retail sale of tangible personal property made within the state of Utah equivalent to two (2) per cent of the purchase price paid or charged * * *." The Emergency Revenue Act of 1933, Section 4, Chapter 63, Laws of Utah, 1933, as Amended by Section 1, Chapter 20, Laws of Utah, Second Special Session, 1933.

It is the plaintiffs' position that a sale by them as manufacturers to contractors for use in private and public construction is not a "retail sale" within the contemplation of the act. The defendant Tax Commission contends that by

the provisions of the act it is "apparent that the sales tax applies to the sale to the ultimate 'user or consumer.' "

Under paragraph (e), Section 2, Chapter 20, Laws of Utah, Second Special Session, 1933, as amended by Laws 1939 c. 103, amending the original act of 1933, it states the term "retailer" to mean

"a person doing a regularly organized retail business in tangible personal property, known to the public as such and selling to the *user* or *consumer* and not for resale, and includes commission merchants and all persons regularly engaged in the business of selling to *users* or *consumers* within the state of Utah * * *. The term 'retail sale' means every sale within the state of Utah by a retailer or wholesaler to a *user* or *consumer*, except such sales as are defined as wholesale sales or otherwise exempted by the terms of this act * * *." (Italics added.)

"Wholesale" is defined under the Emergency Revenue Act of 1933, as amended by paragraph (d), Section 2, Chapter 103, Laws of Utah, 1939, as meaning

"a sale of tangible personal property by wholesalers to retail merchants, jobbers, dealers or other wholesalers or retailers to *users* or *consumers* not for resale, except as otherwise hereinafter specified." (Italics added.)

From the context of our statute "used" and "consumed" may be said to express the same meaning—to make use of, to employ, and does not necessarily mean the immediate destruction or extermination or change in form of the article or commodity.

The paramount question then turns upon the proposition of whether the contractors to whom the plaintiffs sold their products were "users" or "consumers" within the meaning of the act or whether they were mere dealers in the products reselling to the third parties.

For purposes of discussion, we shall treat plaintiffs' sale to private and public highway contractors at one and the same time. These sales are made under similar contracts. One to contractors for the construction of privately owned

projects; the other to contractors for public projects. Each contract is for a lump sum. No separate charges are made for labor or materials as far as the owner of the project is concerned.

The plaintiffs place much reliance on the case of *Western Leather & Finding Co.* v. *State Tax Commission*, 87 Utah 227, 48 P. 2d 526. The writer has had doubts as to the correctness of the ruling in that case wherein it was held by this court that shoe repairmen were not subject to the sales tax on the theory that they did not consume the shoe leather applied by them to shoes. It was held as a purchase of the leather by the shoe repairmen from the manufacturer for the sole purpose of reselling as leather soles and heels. The leather remained as tangible personal property; whereas, in the instant case, contractors purchase the pipes, culverts and cinder blocks for the purpose of using and consuming them by incorporating them as one of many units which go to make up buildings, structures, or roads, as the case might be, and not for reselling them as such in their original form, but for the purpose of changing their very nature from personal to real property. In short, labor and many other materials enter along with the plaintiffs' products to make up the particular structure, and they are all used or consumed in the process of producing a new entity. The case of the *Western Leather & Finding Co.* v. *State Tax Commission*, supra, may be distinguished along these lines.

In the case of the *City of St. Louis* v. *Smith*, 342 Mo. 317, 114 S. W. 2d 1017, 1019, under a retail sales statute similar in intent and wording to ours, building, paving and sewer contractors were held liable for the tax as "consumers," and it was the dealer's duty to collect the tax at time of sale. The court stated that in its

"judgment the contractors in this case did not buy the materials in question for the purpose of reselling such materials to the city. They were under contract to deliver to the city a finished product. It was the inseparable comingling of labor and material that produced the finished product."

Again in the case of *Atlas Supply Co.* v. *Maxwell,* 212 N.
C. 624, 194 S. E. 117, 118, the court on holding plumbing
and heating contractors subject to sales tax law, stated that

"they purchase the materials and supplies, not for resale as tangible
personal property, but for use in producing the turnkey job. There
is no resale of the materials and supplies, as such, either actual or
intended, within the meaning of the act." See views expressed to the
same effect in *Lone Star Cement Co.* v. *State Tax Commission,* 234
Ala. 465, 175 So. 399; *Albuquerque Lumber Co.* v. *Bureau of Revenue,*
42 N. M. 58, 75 P. 2d 334; *State* v. *J. Watts Kearney & Sons,* 181 La.
554, 160 So. 77; *Herlihy Mid-Continent Co.* v. *Nudelman,* 367 Ill. 600,
12 N. E. 2d 638, 115 A. L. R. 491.

Cases expressing a contrary opinion: *Bradley Supply
Co.* v. *Ames,* 359 Ill. 162, 194 N. E. 272, and *Blome Co.* v.
*Ames,* 365 Ill. 456, 6 N. E. 2d 841, 111 A. L. R. 940, which
were later distinguished and overruled respectively in *Herl-
ihy Mid-Continent Co.* v. *Nudelman,* supra; *Moore* v. *Pleas-
ant Hasler Construction Co.,* 50 Ariz. 317, 72 P. 2d 573, re-
versed on rehearing in *Moore* v. *Pleasant Hasler Construc-
tion Co.,* 51 Ariz. 40, 76 P. 2d 225; *Wiseman* v. *Gillioz,* 192
Ark. 950, 96 S. W. 2d 459.

Having decided that contractors are consumers within
the meaning of our act because they are the last persons
in the chain to deal with such products before incorporation
into a separate entity and before such products lost their
identity as such, the question arises, are sales to state
highway contractors (involving 98% of the sales in █
the instant case) exempt under Section 6, Chapter 63,
Emergency Revenue Act of 1933, as amended by Laws of
Utah, 1933, Second Special Session, Chapter 20, Section 1,
which, among others, exempts sales to the state of Utah
from taxation.

Plaintiffs argue that "road contractors were only in-
strumentalities of the state" and as such exempt under
Section 6. With this we do not agree. It is true that under
this section sales made directly by plaintiffs to the state

would be exempt, but in the instant case the sales are to an independent contractor and not to an agent of the state. These independent contractors are the consumers of the articles in the process of building roads for the state. As such, no exemption is extended to them, and plaintiffs are liable for the collection of the tax. The plaintiffs, as testified at the hearing, look solely to the contractors for their payment, and not to the state. The fact that the burden of the tax is passed by the contractor to the state in the form of higher bids, and in this manner is indirectly paid by the state does not bring plaintiffs under the exemption found in Section 6. *State of Alabama* v. *King & Boozer*, 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 1; *Curry* v. *United States*, 314 U. S. 14, 62 S. Ct. 48, 86 L. Ed. 6.

Plaintiffs are persons regularly engaged in the business of selling to contractors both public and private who are users or consumers within the meaning of the Revenue Act of 1933, and are thus liable for collection of taxes in sales so made.

In answer to the third and last question, we hold that building materials used by the manufacturer for his own use are not subject to tax under the Use Tax Act. of 1937.

The defendant State Tax Commission cites no cases in support of its view but bases its position on the proposition that inasmuch as the Use Tax was passed as a supplementary tax to the Emergency Revenue Act of 1933, to equalize unfair tax burdens arising therefrom, the plaintiff was liable for the tax. The defendant classifies the transfer of use by the manufacturer as being an act within the intent of the legislature. With this view we do not agree.

The Legislature stated in Section 3, Chapter 114, Laws of Utah 1937, that

"there is levied and imposed an excise tax on the storage, use or other consumption in this state of tangible personal property *purchased* on or after July 1, 1937, for storage, use or other consumption in this state at the rate of two per cent of the sales price of such property;" (Italics added.)

whereas, under paragraph (c), Section 2, of this same act "purchase" is defined as meaning

"any transfer, exchange or barter, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration. A transaction whereby the possession of property is transferred but the seller retains the title as security for the payment of the price shall be deemed a purchase."

"Transfer" is defined in Webster's New International Dictionary, 2nd Edition, as:

"1. Act of transferring or state of being transferred; the removal or conveyance from one place, person or thing, to another; transference; transmission. 7. *Law.* The conveyance of right, title, or property, either real or personal, from one person to another whether by sale, by gift, or otherwise; any act by which the property of one person is vested in another."

The definition of "purchase" thus includes a "transfer, exchange or barter" for a consideration. The mere bookkeeping and physical transfer of the use of one's own products not only does not come within the clear meaning contemplated by the legislature of "transfer, exchange or barter," but is also lacking in consideration. The mere charge on the books of the plaintiff for the materials they used for themselves is for purposes of keeping inventories correct and cannot be termed a "transfer" in the sense as used by the Legislature, nor can the fact that the materials were "transferred" from Provo, Utah, where they were made, to Salt Lake City, Utah, where they were used, be so designated. The Legislature contemplated transfer of right, title, or property from one person to another, and not simple bookkeeping entries or physical transfer from one place to another.

Defendant maintains that long compliance with an administrative ruling lends strength to the presumption of the regulation's validity citing *State Board of Land Commissioners* v. *Ririe,* 56 Utah 213, 190 P. 59; *In the Matter of the Estate of John Cowan,* 98 Utah 393, 99 P. 2d 605; *United States* v. *Missouri P. R. Co.,*

278 U. S. 269, 49 S. Ct. 133, 73 L. Ed. 322, 323. This is true. However, the interpretation placed on the language of the statute by the Tax Commission must not do violence to its apparent meaning. The construction placed here by the defendant Tax Commission on the Act misinterprets the meaning and intent of the Legislature. It cannot be termed a "practical" construction. Governmental agencies cannot deprive the courts of their judicial functions nor can the agencies extend the operation of the statute by administrative regulations. *Western Leather & Finding Co.* v. *State Tax Commission,* supra; *P. H. Mallen Co.* v. *Department of Finance,* 372 Ill. 598, 25 N. E. 2d 43; *Dun & Bradstreet* v. *City of New York,* 276 N. Y. 198, 11 N. E. 2d 728; *Northern Pacific Ry. Co.* v. *Henneford,* D. C., 15 Supp. 302.

The order complained of is hereby affirmed as to the taxation of plaintiffs under the Emergency Revenue Act of 1933, and reversed as to the tax imposed on plaintiff under the Use Tax Act of 1937.

It is so ordered. No costs allowed.

McDONOUGH and PRATT, JJ., concur.

MOFFAT, Chief Justice (concurring).

I think this case is distinguishable from the *Western Leather & Finding* case, 87 Utah 227, 48 P. 2d 526.

LARSON, Justice (concurring).

I am uncertain whether the opinion of Mr. Justice WOLFE is to be interpreted as disapproving the rule laid down in *Western Leather & Finding Co.* v. *State Tax Commission,* 87 Utah 227, 48 P. 2d 526, or whether it is intended to reaffirm the doctrine therein laid down and distinguish this case from that one. I am unable to see any logical distinction or any sound or reasonable basis for distinguishing the two cases. I have always thought the Western Leather case unsound. If the holding in that case is still to

stand as a correct statement of the law then the conclusions reached by Mr. Justice WOLFE, in the present case are unsound. It is because I think the decision in this case by necessary implication overrules and disapproves the Western Leather case that I concur herein.