STATE OF MARYLAND *v.* FRANCIS D.
CHRISTHILF, ET AL.
STATE OF MARYLAND *v.* CONSOLIDATED
ENGINEERING COMPANY
[Nos. 40, 41, April Term, 1936.]

*Decided June 10th, 1936.*

The causes were argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Herbert R. O'Conor, Attorney General,* and *Edgar Allan Poe, Jr., Special Assistant Attorney General,* with who was *William L. Henderson, Assistant Attorney General,* on the brief, for the State.

*G. C. A. Anderson,* with whom were *Keech, Carman, Tucker & Anderson* on the brief, for Christhilf and Ensey, appellees.

*Morris Rosenberg,* with whom were *Allan Sauerwein* and *Tydings, Sauerwein, Levy & Archer* on the brief, for the Consolidated Engineering Company, appellee.

*Herman M. Moser, Walter C. Mylander,* and *Nathan Patz,* filed briefs as *amici curiae.*

SLOAN, J., delivered the opinion of the Court.

The question involved is whether the Emergency Gross Receipts Tax, as enacted by chapter 188 of the Acts of 1935, applies (1) to road contractors for materials entering into the construction of a public road, and (2) to a contractor for the materials used in the erection of a building. The trial court held the contractor not to be chargeable with the tax imposed by the act, and from judgments in favor of the defendants the State appeals.

The first appeal, No. 40, is the case of Francis D. Christhilf and John H. Ensey, copartners, trading as

Christhilf & Ensey, who contracted with the State for the construction of 3.1 miles of highway on the road known as the Annapolis Boulevard, under what is known as a "unit bid contract." A separate bid was made for each unit, and the aggregate of forty-four units constituted the estimated contract price. The total contract price was estimated at $202,172.45, and the actual price paid $235,420.35, due to the difference between the estimated units and the actual requirements for the completion of the road; the increase having been made on the basis of the original unit prices. The contract was signed July 26th, 1934, and the completed road accepted by the State Roads Commission November 12th, 1935. Eliminating receipts prior to April 1st, 1935, when the act took effect, the comptroller estimated the materials entering into the construction of the road at $106,513.08, and on this basis demanded the one per cent. tax imposed by the statute. The assessed price of materials was their cost to the contractors, and was also the selling price, if there was a sale by the contractors to the State.

The second appeal, No. 41, is in the case of the Consolidated Engineering Company, Inc., which contracted May 4th, 1934, with the Board of Regents of the University of Maryland, for the erection of an arts and science building at College Park, for $259,850. The comptroller has made an assessment for materials entering into the structure since March 31st, 1935, on the basis of $133,-363.38, and demanded the tax on the same at one per cent.

The tax is demanded of the defendants in both cases on the theory that they sold the materials which went into the contracts at retail, a conclusion with which this court disagrees.

The section of the Act of 1935, chapter 188 (section 72-B), which the State invokes, reads as follows: "For the privilege of engaging in the business of selling tangible personal property at retail, there is hereby imposed upon every person engaging in such business a license fee or tax, in addition to all other fees or taxes imposed by law, at the rate of one per centum of the gross receipts

of any such person, on and after April 1st, 1935, to and including March 31st, 1936, from the sale of all tangible personal property at retail."

The title of the act, which must show its purpose and object, so that "he who runs may read" (Constitution, art. 3, sec. 29), provides "for the levy and collection of a tax for the privilege of engaging in the business of selling tangible personal property at retail at the rate of 1% of the gross receipts from such sales." It is apparent from the wording of the titling of section 72-B that ordinarily the decision would depend on the definition of the word "retail," qualified, however, by the definitions set out in section 72-A of the Act of 1935 (Jones v. Gordy, 169 Md. 173, 180 A. 272), and, unless the act so defines it as to bring it within the facts of this case, then the commonly accepted meaning will prevail.

Section 72-B, which provides for the levy of the tax, also in terms makes of it an occupational tax when it says it is the consideration "for the privilege of engaging in the business of selling tangible personal property at retail," so that it is implied that these defendants are engaged in the business of retail merchandising, wherein the tax is measured or calculated from retail sales of merchandise, and this is the only inference to be drawn from subsection (b) of section 72-A, where the word "business" is defined to include "all activities or acts engaged in or caused to be engaged in by any person with the object of gain, profit, benefit or advantage, either direct or indirect, through the sale of goods, wares, merchandise or other tangible personal property to the ultimate consumer, user, customer or patron." Subsection (c) defines the word "sale" to mean "any transfer of the ownership or title of tangible personal property to the consumer for use and not for purposes of resale for a monetary consideration."

By subsection (d) a "vendor" means "any person who engages in the business of selling at retail tangible personal property subject to the tax imposed by this Act, whether such person is a manufacturer, producer, whole-

saler, jobber or retailer." Subsection (g) defines the "consumer" to mean "the purchaser at final sale or the user of any tangible personal property subject to the tax imposed by this Act."

Reading these definitions and section 72-B together, it does not require any abstract reasoning nor the use of technical terms to understand that the act was intended to impose a one per cent. tax on all retail dealers in goods, wares, and merchandise to the extent of their sales, and that the tax is to be paid by the one who makes the last sale to a customer who will use or consume them; and, when the goods or merchandise get into the hands or possession of this ultimate user or consumer, it must still be "tangible personal property."

When the Act of 1935 went into effect, the comptroller, whose duty it was to collect the tax and to make such rules and regulations as might be necessary to effectuate its purposes, advised the defendants Christhilf and Ensey that they would not be taxable, and proceeded to collect this tax from those who sold them road materials, such as sand, stone, and cement. This plan continued until in October, 1935, when the rule was changed and demand was made on the defendants in these cases, and their resistance brings the cases here, some materialmen co-operating with the State against the contractors in very elaborate briefs.

The decision in these cases not only turns on the meaning of the word "retail" but also on the character of the property when it finally lands in the possession of the ultimate owner, and it makes no difference whether he is called a consumer or user.

The State and *amici curiae* in their briefs urge this court to adopt the construction put on the Illinois Emergency Tax Act (Smith-Hurd Ann. St. ch. 120, sec. 440 et seq.) in *Bradley Supply Co. v. Ames*, 359 Ill. 162, 194 N. E. 272, 275, where it was said: "The definition of a 'sale at retail' as 'any transfer of the ownership of, or title to, tangible personal property,' is broad enough to cover the transfer of title made by a contractor who attaches tangible personal property to real estate in accordance with a contract. It is clearly a transfer of

title for a valuable consideration." Much as we respect that court, we cannot agree with the view that there is a transfer of title to so many feet of lumber, kegs of nails, thousands of brick, perches of stone, cubic yards of concrete, or other items of materials entering into a lump sum contract, for a complete job or structure, which, when erected on the customer's land, is as much real property as the land itself and is by no sort of definition or reasoning "tangible personal property." See *State v. J. Watts Kearny & Sons*, 181 La. 554, 160 So. 77; 23 *R. C. L.* 1233, Sales, sec. 49.

It is the contractor or builder who is the ultimate user or consumer of the materials which in one of these cases are converted and fabricated into a building and in the other into a road. In principle there is no difference between the two kinds of structures. Nor do we see the application of the case of the cobbler, cited by the State, in *Western Leather & Finding Co. v. State Tax Commission* (Utah) 48 P. (2nd) 526, for whether the shoes are new or repaired, they are still tangible personal property. More in line with the views of this court is the case of *York Heating & Ventilating Co. v. Flannery*, 87 Pa. Super. 19, where it was said of the installation of a blower and heating system by contract: "The contract in suit was in no sense a contract of sale. It was a construction contract. * * * It would be just as proper to call a contract for the construction of a building a sale of the stone, brick, cement, wood, etc., which entered into the erection of the building."

The question presented in this case, so far as it relates to a tax on sales, has not been before this court, but the principle involved, that is, the breaking of a building contract into the items of construction, has, in *Evans Marble Co. v. International Trust Co.*, 101 Md. 210, 218, 60 A. 667, 670, where it was held that a mechanic's lien claim for labor could not be enforced where the contract included both labor and materials, when the statute under which the lien was sought gave a lien to secure labor only, this court saying: "In a contract of this

nature the profits arise out of the whole contract. No specific or definite part of the compensation is earned by the performance of labor alone, nor by the furnishing of materials alone. In the contemplation of the parties, it is the inseparable intermingling of both that earns the compensation." *Milske v. Steiner Mantel Co.*, 103 Md. 235, 248, 63 A. 471.

In construing a statute, courts are bound to give such a construction as will effectuate the legislative intent, when that intent can be ascertained, but it is not the duty or province of a court so to stretch the provisions of a statute as to make the decision a legislative act and gather in objects not contemplated by the Legislature or not clearly falling within its provisions *(State Tax Commission v. Harrington*, 126 Md. 157, 166, 94 A. 537; *Levering v. Board of Park Commissioners*, 134 Md. 48, 57, 106 A. 176), and that is what we think this court would do if we yielded to the contention here made by the State.

*Judgments in Nos. 40 and 41 affirmed.*