175 So. 399

**LONE STAR CEMENT CORPORATION et al. v. STATE TAX COMMISSION et al.**

3 Div. 222.

Supreme Court of Alabama.

June 14, 1937.

Rehearing Denied June 28, 1937.

466

John S. Coleman, Bradley, Baldwin, All & White, Benners, Burr, McKamy & Forman, Cabaniss & Johnston, and Jos. F. Johnston, all of Birmingham, for appellants.

A. A. Carmichael, Atty. Gen., B. W. Simmons, Asst. Atty. Gen., H. L. Ander-

ton, of Birmingham, E. C. Boswell, of Geneva, and L. H. Ellis, of Columbiana, for appellees.

BROWN, Justice.

This appeal is from a declaratory decree interpreting subsections (h) and (i) of section 1, and subsection (k) of section 4 of the Gross Sales Tax Act approved February 23, 1937 (Gen.Acts 1936–37, Ex.Sess., pp. 125, 128, labeled "Alabama Luxury Tax Act."

The bill filed by appellants alleges that they are each engaged in the manufacture of Portland Cement in Jefferson county; that they sell their products to the United States, the state of Alabama, and various counties, cities, and towns, in Alabama, and to contractors who have contracts to build or construct various improvements or structures for said "political entities," and to private contractors, landowners, and other private parties, and to dealers who buy it for resale. That "The great bulk of the cement sold by complainants, except that sold to dealers, is *used by the purchasers as an ingredient or component part in manufacturing concrete or mortar, which concrete or mortar is thereafter used by said purchasers in building or constructing roads, streets, highways, embankments, viaducts, bridges, railroads, trestles, foundations, dams, buildings and other things of a similar character."* (Italics supplied.)

That prior to filing the bill the State Tax Commission advised complainants that they were liable for the tax levied by said act for cement sold and delivered in Ala-

bama, and used by the purchasers for the purposes included in the above italicized averments, while the complainants asserted that under such conditions they were not liable for the tax for sales so made.

The decree of the circuit court sustained the contention of the tax commission and declares:

"1: That the provisions of the Act of the Legislature of Alabama approved February 23, 1937, levying a tax of two per cent of the gross proceeds of sales upon every person, firm or corporation engaged or continuing within this State in the business of selling at retail any tangible personal property whatsoever, apply to sales in the State of Alabama of Portland Cement in carload lots or other quantities to contractors with the United States, the State of Alabama, the counties, cities and towns in the State of Alabama, or to other contractors, or to other private landowners, or to other private parties, where such cement is purchased for use and is used by the purchasers thereof as an ingredient or component part in the compounding, manufacturing or processing of other tangible property, viz: concrete or mortar, which concrete or mortar when manufactured will be used or employed by such purchasers in connection with the construction or building of roads, streets, highways, embankments, viaducts, bridges, railroads, trestles, foundations, dams, buildings and other things of a similar character, such being transactions as are taxable under the 1937 Alabama Retail Sales Tax Act."

The bill avers, and the answer admits that:

"Portland cement is variously made of chalk, limestone, marl, clay, slate and blast furnace slag. The principal ingredient of the portland cement manufactured by complainants is limestone, which article comprises approximately 85% of the total ingredients entering into the finished product. All of the ingredients are intimately mixed and burned in a kiln to incipient vitrification. A clinker is formed as a result of the burning process, which is thereafter ground to a very fine powder. The finished product must conform to certain standards and specifications and the cement manufactured by the complainants complies with the requirements fixed by the Bureau of Standards of the United States Government.

"After cement is manufactured, it cannot as a separate commodity be used for any useful purpose. It is necessary to mix it with sand, lime, water and other ingredients before it can be utilized. This mixing process of cement with other ingredients is usually done by the use of machinery, but on occasions the various ingredients are placed in wooden or other containers and mixed by laborers who use hand tools for this purpose. After this mixing process is completed, a new product is formed which is commonly called concrete or mortar, which is tangible personal property and is a separate and distinct product having different form, properties and uses from cement."

To sustain their contention that the decree is laid in error, appellants contend:

First, that cement sold and used by the purchasers as an ingredient or component part of mortar or concrete is a sale at wholesale within the meaning of section 1, subsection (h) of the act, whether such mortar or concrete is used in the manufacture of an article of "tangible personal property" or is attached to and becomes a part of real estate; second, that cement sold to be used by the purchaser in building roads, bridges, dams, trestles, railroads, viaducts, and similar structures is not *"building material"* within the meaning of said act; third, that the legislative intent as expressed in subsection (k) of section 4 is to exempt the receipts from all sales of commodities by manufacturers in carload lots from the computation of said tax.

The tax is imposed as a "privilege or license tax against the person on account of the business activities" and the amount of the tax is measured and determined by applying the fixed rate "against gross sales or gross receipts" and applies to "every person, firm or corporation engaged or continuing within the State in the business of selling at retail any tangible personal property whatsoever, including merchandise and commodities of every kind and character, [not including, however, bonds or other evidences of debt or stocks.]"

The tax applies to persons, firms, or corporations "engaging or continuing in business as a retailer and wholesaler or jobber," and the amount is computable on the gross receipts of the business unless "books are kept so as to show separately, the gross proceeds of sale of each business," that is, so as to show separately the gross receipts of the retail sales, and the gross receipts of wholesale sales. Luxury Tax Act, § 2.

■ The tax is imposed, not by said section 2, standing alone, but by the act, and to ascertain the legislative intent, the act is to be considered as a whole in the light of existing facts and conditions, known to all men, and, of which courts take judicial notice. Davis v. State, 16 Ala.App. 397, 78 So. 313; Prowell v. State, 142 Ala. 80, 39 So. 164; State ex rel. City of Birmingham v. Board of Revenue of Jefferson County, 201 Ala. 568, 78 So. 964; McCreless v. Tennessee Valley Bank, 208 Ala. 414, 94 So. 722.

■ The properties, constituent elements, and general uses of "Portland Cement" are matters of common knowledge and courts take judicial notice of the fact that it is a basic building material. See Webster's International Dictionary, "Portland Cement." Donaldson v. Roksament Stone Co. (C.C.) 170 F. 192; Independent Life Ins. Co. v. Carroll, 222 Ala. 34, 130 So. 402; Sovereign Camp, W. O. W. v. Allen, 206 Ala. 41, 89 So. 58.

■ We now proceed to dispose of the appellants' contentions in the order above stated, in the light of the foregoing well-settled rules for interpreting statutes.

Section 1 of the act defines words and phrases used therein. Subsection (h) provides: "The term 'wholesale sale' or 'Sale at wholesale' means a sale of tangible personal property by wholesalers to licensed retail merchants, jobbers, dealers, or other wholesalers for resale *and does not include a sale by wholesalers to users or consumers, not for resale.* The term 'wholesale sale' shall include a sale of tangible personal property or products to a manufacturer, mine, quarry operator, or compounder which enters into and becomes an ingredient or component part of *the tangible personal property or products which he manufactures* and machinery used in such compounding, mining, quarry operator, manufacturing, or processing." (Italics supplied.)

This definition of "wholesale sales" clearly excludes sales by a manufacturer to a consumer for his own uses unless the commodity sold is used in producing "tangible personal property" or "machinery used in such compounding."

Subsection (i) of section 1 defines "sale at retail" or "retail sale" as "all sales of tangibles personal property except those above defined as wholesale sales." [In Subsection h]. The quantities of goods sold or prices at which sold are immaterial in determining whether or not a sale is at retail, except as herein expressly provided.

"*Sales of building materials to contractors, builders or landowners for resale or use in the form of real estate are retail sales in whatever quantity sold.* Sales of tangible personal property or products to manufacturers, quarry, mine operators or compounders, which are consumed by them in manufacturing mining, quarrying or compounding *and do not become an ingredient or component part of the tangible personal property manufactured or compounded* are retail sales." (Italics supplied.)

This subsection clearly discloses a legislative intent to make gross receipts from sales of commodities which are consumed by the purchaser or so used as to destroy such commodity as a constituent element of "tangible personal property," the resale of which is itself subject to the tax, a basis of computation of the tax.

The provision of section 4, subsection (k), is that "Amounts received by manufacturers, compounders, processers, producers, miners, and quarriers from sales to consumers in carload lots or in larger quantities" are exempt from the tax "*except as otherwise expressly provided in Section 1 of this Act.*" (Italics supplied.)

This exception refers to the provisions in section 1 that "Sales of building materials to contractors, builders or landowners for resale or use in the form of real estate are retail sales in whatever quantity sold. Sales of tangible personal property or products to manufacturers, quarry, mine operators or compounders, which are consumed by them in manufacturing mining, quarrying or compounding *and do not become an ingredient or component part of the tangible personal property manufactured or compounded* are retail sales," manifesting a legislative intent not to exempt sales falling within these classifications. (Italics supplied.)

The purchasers in these classes are the ultimate consumers and the legislative intent is to make the sale to the consumer the basis for computing the tax. State v. Christhilf, 170 Md. 586, 185 A. 456.

In truth and in fact the tax can well be denominated a consumer's tax. See section 26.

The decree of the circuit court, sitting in equity, is in accord with the foregoing interpretations of the statute and is due to be affirmed.

So ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.