ACORN IRON WORKS, INC., *v.* STATE BOARD OF TAX ADMINISTRATION.

1. Taxation—Sales Tax—Steel Processor.
   Corporation which purchased structural steel from sources outside of the State in the regular course of interstate commerce and after drilling and fitting it for use in structures for furnishing which it entered into contracts with contractors or owners was not subject to State sales tax where, upon completion of its contracts, either on a lump sum or labor-and-material basis, the steel became a part of the realty (Act No. 167, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935).

2. Same—Structural Steel—Sales Tax.
   Use of structural steel by steel processor in performance of its construction contracts was not merely incidental to transfer of ownership of tangible personal property where after ''fabrication'' for the particular purpose contemplated by the

plans and specifications the steel was not usable as a separate product nor was the transaction a proper basis of computation of tax on sales of tangible personal property (Act No. 167, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935).

3. SAME—TAX APPLICABLE ONLY TO SALES AT RETAIL.

Fact that corporation, licensed under the general sales tax act, made some transactions subject to the tax would not render transactions not within definition of ''sale at retail'' subject to such tax (Act No. 167, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935).

4. SAME—SALES TAX RESTS UPON STATUTES, NOT UPON ADMINISTRATIVE REGULATIONS.

Liability for payment of the sales tax is controlled by statute and cannot be imposed by rulings or regulations of the State board of tax administration (Act No. 167, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935).

5. SAME—CONSTRUCTION OF STATUTES—AUTHORITY OF COLLECTORS.

Tax exactions, property or excise, must rest upon legislative enactment and collectors can act only within express authority conferred thereby, the scope of such laws cannot be extended by implication or forced construction, and language, if dubious, is not resolved against the taxpayer.

6. SAME—ERECTION OF BUILDINGS—SALES TAX.

Transactions falling within category of erection contracts, fabrication in conjunction with erection of buildings which become a part of the real estate, are not subject to assessment under the general sales tax act (Act No. 167, Pub. Acts 1933, as amended).

Appeal from Wayne; Nicol (Henry G.), J. Submitted April 9, 1940. (Docket No. 70, Calendar No. 40,731.) Decided October 7, 1940.

Petition by Acorn Iron Works, Incorporated, a Michigan corporation, against State Board of Tax Administration to have certain steel construction contracts declared not subject to the general sales tax law. Judgment for petitioner. Defendant appeals. Affirmed.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd* and *Andrew De Maggio,* Assistants Attorney General, for appellant.

*S. Brooks Barron (Irving L. Zack* and *Jerome A. Rothenberg,* of counsel), for appellee.

NORTH, J.   Plaintiff, a Michigan corporation, petitioned for a declaration of rights which involves a construction, as applied to the business carried on by it between July, 1933, and July, 1936, of Act No. 167, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935 (Comp. Laws Supp. 1940, § 3663-1 *et seq.,* Stat. Ann. § 7.521 *et seq.*), commonly denominated as the general sales tax law.   Plaintiff's business involved both the sale and the use of structural steel which it obtained from sources outside of Michigan in the regular course of interstate commerce.   Plaintiff also engaged in an activity designated as processing structural steel, such as drilling and fitting the steel for its setting in structures in which it was used; but it is agreed that plaintiff's activities in processing were merely matters of work and labor, and that they did not involve the sale of "tangible personal property," and that therefore they were not subject to a sales tax.   Plaintiff's business also involved sales of structural steel over the counter to others for use; but in so far as such sales did not contemplate resale but instead were made to the consumer, plaintiff in its brief concedes they were subject to the sales tax.

Aside from the above, plaintiff's transactions involved in this suit arose from steel construction contracts.   These contracts in some instances were with the property owners and in others they were with the general building contractor, plaintiff being a subcontractor.   These contracts were of two types.

In some plaintiff contracted to furnish for a lump sum the labor and material and in others the consideration was on a time-and-material basis. In each case plaintiff's undertaking was to furnish the labor and structural steel requisite to the performance of its contract in erecting, repairing or altering a structure in accordance with designated plans and specifications. The question presented for determination is whether such transactions either with the owners of the property or with the building contractor (including subcontractors) were of such a character that they imposed upon plaintiff the obligation to pay a sales tax on the structural steel used.

Transactions of the character here involved might seem at first blush to have been retail sales of tangible personal property to the ultimate consumer and therefore subject to the sales tax. But careful consideration of the character of the property sold, the manner of its use incident to the sale, and the time and conditions under which title passed to the purchaser bring the conclusion that these transactions were not subject to the sales tax, and such is the quite uniform holding in courts of last resort.

At the time of the transactions involved in this litigation as to what constituted a sale, the statute [*] provided and still provides:

"The term 'sale at retail' means any transaction by which is transferred for consideration the ownership of tangible personal property, when such transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use other than for consumption or use in industrial processing or agricultural producing, or for any other purpose than for resale in the form of tangible personal property."

---

* Comp. Laws Supp. 1940, § 3663-1, Stat. Ann. § 7.521.—REPORTER.

In passing it should be noted that by amendment (Act No. 313, Pub. Acts 1939) there has been added to the above-quoted provision the following:

"Provided, however, That tangible personal property permanently affixed and becoming a structural part of real estate shall not be considered as consumed or used in industrial processing or agricultural producing." [*]

The lump sum contract transactions here involved, regardless of whether plaintiff's undertaking was with a construction contractor or with an owner, were for a stipulated sum covering both time and material and in consideration of which plaintiff contracted to erect a designated steel structure according to plans and specifications. In plaintiff's process of performance the materials used ceased to be personal property and became a part of the realty in which form plaintiff obligated itself to deliver the completed contract product to the party with whom it had contracted. Before title to the structural steel passed and before plaintiff's contract was completed the subject matter of the contract had ceased to be "tangible personal property." Plaintiff's lump sum construction contract required it to perfect and deliver a structure which conclusively was realty, not personalty. Such a transaction is not subject to the Michigan sales tax imposed on sales of tangible personal property. This conclusion is sustained by the following authorities. *Herlihy Mid-Continent Co.* v. *Nudelman,* 367 Ill. 600 (12 N. E. [2d] 638, 115 A. L. R. 485); *State* v. *Christhilf,* 170 Md. 586 (185 Atl. 456); *City of St. Louis* v. *Smith,* 342 Mo. 317 (114 S. W. [2d] 1017); *State* v. *J. Watts Kearny & Sons,* 181 La. 554 (160 South. 77); *Atlas Supply Co.* v. *Maxwell,* 212 N. C. 624 (194 S. E. 117); *Albuquer-*

[*] Comp. Laws Supp. 1940, § 3663-1, Stat. Ann. 1940 Cum. Supp. § 7.521.—REPORTER.

*que Lumber Co.* v. *Bureau of Revenue,* 42 N. M. 58 (75 Pac. [2d] 334) ; and *Lone Star Cement Corp.* v. *State Tax Commission,* 234 Ala. 465 (175 South. 399).

A contrary result was reached in the following cases. *Bradley Supply Co.* v. *Ames,* 359 Ill. 162 (194 N. E. 272) ; *Blome* v. *Ames,* 365 Ill. 456 (6 N. E. [2d] 841, 111 A. L. R. 940) ; *Moore* v. *Pleasant Hasler Construction Co.,* 50 Ariz. 317 (72 Pac. [2d] 573) ; *Wiseman* v. *Gillioz,* 192 Ark. 950 (96 S. W. [2d] 459). The force of these decisions is minimized by the following facts. The *Blome Case* and the *Bradley Supply Company Case,* decisions by the supreme court of Illinois, are distinguished or over-ruled by the later decision of that court in *Herlihy Mid-Continent Co.* v. *Nudelman, supra;* and at least to some extent the decision of the Arizona court in the *Moore Case* is based upon the early decision of the Illinois supreme court in the subsequently over-ruled *Blome Case;* and seemingly decision of the Arkansas court in the *Wiseman Case* turned largely upon a construction of the words used in the statute which differs somewhat materially from the Michigan statute. The Arkansas statute defines a sale at retail as follows:

"Any transaction, transfer, exchange, or barter by which is transferred for a consideration the ownership of any personal property, * * * made in the ordinary course of the transferor's business and is made to the transferee for the consumption or use or for any other purpose than for resale." Act No. 233, § 3, subd. (b)1, Ark. Acts of 1935. *

The materials involved in the Arkansas case were used by a contractor in building a dam for the city of Fort Smith for a lump sum. In its decision the

---

* Pope's Statutes of Arkansas (1937), § 14069.—Reporter.

court said: "It seems to us that the only question is whether there was a transfer to the city for a consideration. If so, it comes within the terms of section 3 of the sales tax law. If there was a transfer of ownership, as mentioned in section 3 of the act, there was a sale to the city upon which the tax must be paid, unless the appellees were entitled to exemption." Seemingly the Arkansas court construed the language of its statute as being broader than other courts have construed somewhat similar statutory provisions in the decisions first above cited.

In so far as some of plaintiff's contractual engagements have been on the basis of "time and material" rather than for a lump sum, we quote the following comment from appellants' brief:

"Under 'time-and-material contracts' plaintiff has a written order to proceed with a job on a cost-plus basis, but the method and manner of doing the work is practically the same. In arriving at its figures when computing the charge to be made on a time-and-material contract, plaintiff keeps a record of all materials that go into the job, of all engineering or drafting labor, of all labor entering into the job, and then of the erection labor; and when the job is completed, it adds the sums up, and adds its profit, and considers that the price to the contractor or owner, 'whichever happens to be the case for the job.' * * *

"Plaintiff, when engaging in such a contract (lump sum contract) does not segregate its figures for material and labor, and the owner of the building would not know the amount paid for each item, but plaintiff's private records would show a break down of the items of labor and material. Plaintiff would have to figure how much the material was going to cost the company, and how much the labor would cost, before it could give a lump-sum estimate to the owner. * * * From plaintiff's records on lump-sum contracts, the company would know how much material it had put into the job."

As bearing upon plaintiff's liability for payment of a sales tax, there appears to be no material difference whether plaintiff's construction contract with an owner or a contract builder was for a lump sum or on a time-and-material basis. In either case the amount plaintiff charged for performance of its contract must have been based upon the cost or value of materials used as one item and the cost of labor as the other, and in each instance the profit essential to successful conduct of business probably was added. We know of no reason for holding that plaintiff is liable for the sales tax when doing business under either the one form of contract or the other.

Defendants' contention that plaintiff's use of structural steel in performance of its construction contracts "is merely incidental to * * * a transfer of ownership (of 'tangible personal property' and) the transaction is a proper basis of the computation" of the statutory sales tax, is not tenable. This quite conclusively appears from a phase of the factual situation in this case which defendants state in their brief as follows:

"In either case (lump sum contracts or time-and-material contracts), after 'fabrication' of the material for the particular purpose contemplated by the plans and specifications, the steel beams or girders cannot be sold as a separate and distinct product, but (if not used as contemplated) must be scrapped, melted, and remoulded."

To some extent defendants stress the fact that, "The plaintiff at bar engages in the retail sales business, and has applied for and accepted a license under the general sales tax act; it maintains on hand in its shop a stock-in-trade, consisting of from 100 to 200 tons of structural steel material." But it does not follow from the circumstances just above noted

that merely because some of plaintiff's transactions are subject to the sales tax therefore all of its business is likewise subject to the tax. One may be both a retailer and a wholesaler of merchandise, but clearly by the very terms of the statute (section 2) the sales tax law applies only to his "sales at retail." And likewise one may be both a retailer of merchandise and a dealer in real estate, but even so the sales tax would not be applicable to his real estate dealings.

The State board of tax administration from time to time has changed its construction and method of enforcing the sales tax law as it affects building trade transactions; but in this connection it is sufficient to note that liability for payment of the sales tax is controlled by statute. It cannot be imposed by rulings or regulations of the board.

"Tax exactions, property or excise, must rest upon legislative enactment and collectors can act only within express authority conferred thereby, the scope of such laws cannot be extended by implication or forced construction, and language, if dubious, is not resolved against the taxpayer." *J. B. Simpson, Inc.,* v. *O'Hara* (syllabus), 277 Mich. 55.

As applied to plaintiff's building contracts, we affirm the conclusion reached by the circuit judge which he summarizes as follows:

"That plaintiff is engaged in a business which is not subject to the sales tax except insofar as sales made · over the counter are concerned, which, of course, are taxable. That insofar as the application of this act is concerned, building subcontractors should be placed in the same category as building contractors and that the exemption from that tax granted building contractors should be given to plaintiff, and that the assessments heretofore made by the defendant on plaintiff's transactions falling

within the category of erection contracts, fabrication in conjunction with erection when pursuant to specific building contracts, should be cancelled."

A public question being involved, no costs are awarded.

BUSHNELL, C. J., and SHARPE, CHANDLER, MC-ALLISTER, WIEST, and BUTZEL, JJ., concurred. The late Justice POTTER took no part in this decision.