METZEN v. STATE BOARD OF TAX ADMINISTRATION.

1. TAXATION—SALES TAX—TRANSIT-MIXED CONCRETE.
   Tangible personal property, consisting of transit-mixed concrete,
   when poured in place ceases to be personal property and be-
   comes a part of the real estate; hence would not be subject to
   State sales tax (Act No. 167, § 1, Pub. Acts 1933).

2. SAME—COSTS.
   No costs are allowed in suit to determine question of whether
   transfer of ownership of transit-mixed concrete is a sale at
   retail and subject to State sales tax (Act No. 167, § 1, Pub.
   Acts 1933).

BOYLES and NORTH, JJ., dissenting.

Appeal from Wayne; Callender (Sherman D.), J. Submitted April 15, 1942. (Docket No. 64, Calendar No. 41,873.) Decided May 18, 1942. Rehearing denied July 1, 1942.

Petition by E. B. Metzen against Vernon J. Brown, Auditor General, and others comprising the State Board of Tax Administration, to have certain contracts for the furnishing of "wet" cement declared not subject to the general sales tax. Judgment for petitioner. Defendants appeal. Affirmed.

*Iverson, Beattie & Haefele,* for plaintiff.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *T. Carl Holbrook* and *Daniel J. O'Hara,* Assistants Attorney General, for defendants.

BOYLES, J. (*dissenting*).   The question for decision is whether the sale of wet mixed concrete to a general contractor on purchase order, and delivery by dumping into forms on a construction job as required by the contractor's superintendent on the job, is a "sale at retail" as defined in the general sales tax act (Act No. 167, § 1 [b], Pub. Acts 1933, as amended (see Comp. Laws Supp. 1940, § 3663–1 [b], Stat. Ann. 1941 Cum. Supp. § 7.521 [b]).   It is conceded that plaintiff furnishes time and material in the product, prepares it according to required specifications, and agrees to place it in forms or otherwise on the job as required by the contractor's superintendent.

Plaintiff filed a petition in the circuit court for Wayne county in chancery for a declaratory decree and an adjudication that he is not liable for the tax. The defendant, State board of tax administration, filed an answer, seeking to have the transactions decreed to be sales at retail within the meaning of the act.   No question is raised here, or in the court below, as to jurisdiction.   The facts are agreed upon. Plaintiff is engaged in the transit-mixed concrete business.   He procures the raw materials comprising wet concrete, mixes them in transit to a job in accordance with required specifications, and dumps the wet mixed concrete in forms or otherwise on the job as required by the owner or general contractor who is erecting the structure.   Plaintiff has the necessary plant and equipment for this work and exercises the necessary knowledge and skill in preparing the wet mixed concrete to comply with the various requirements of the job.   Plaintiff does not claim to fabricate or build the forms or have anything to do with their location or construction, or their removal after the cement hardens.   Plaintiff takes no part in the actual building of the structure, unless it should be the furnishing of wet mixed concrete and the dumping of it into forms as directed by the super-

intendent on the job. The precise nature of plaintiff's undertaking is shown by a number of "purchase order" exhibits which are conceded to be typical of the conduct of said business by the plaintiff. The following is agreed to be a fair sample of the purchase orders which—when accepted by plaintiff—comprise the contract between plaintiff and the owner or building contractor:

EXHIBIT TWO

"SDB:IW                                     39 No. 1300
   Original Purchase order

O. W. BURKE COMPANY
Builders

E. B. Metzen                                  Detroit, Mich.
   2690 E. Atwater St.                    November 18, 1940
      Detroit
Please ship to us at S. E. Cor      Charge to our Contract 573
   Concord and Harper                  C/ Packard Motor Car
Via . . . . . . Prices F.O.B. job       TUNNEL AND SUPER-
   site as required by our super-        STRUCTURE—
   intendent                             Assembly and Office
Delivery as required by our su-            Apply B.O.
   perintendent                            Extra to O.

OUR ORDER NUMBER MUST APPEAR ON ALL INVOICES

Quantity                    Items                    Price
This is your authority to furnish, f.o.b. job site, as required—in
   accordance with plans and specifications prepared by C A Handey-
   side Company for Packard Motor Car Co. Tunnel and Superstruc-
   ture, Assembly & Office Bldg.
2000 lbs. concrete @   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$4.45/yd.
2500 lbs. concrete @   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4.95/yd.
3000 lbs. concrete @   . . . . . . . . . . . . . . . . . . . . . . . . . . . 5.45
Note: it is understood that at     standard discount
   least 33⅓% of Huron cement       plus Michigan Sales or
   is to be used in this order.      Use Tax
      Union truckmen to be employed to deliver material to site

PLEASE SEND INVOICES IN TRIPLICATE—CONFIRMATION
CONDITIONS

THIS ORDER TO BE PROMPTLY ACKNOWLEDGED and is
   accepted as including all necessary information.
All items furnished to be satisfactory to us as to quality and work-
   manship.
Where working drawings are required four copies must be submitted
   for our approval.  Orders not to be recognized unless signed.
                                    O. W. BURKE COMPANY
                                               "President
                                               "Treasurer
                        By /s/ STEPHEN D. BUTTS Purch. Agent."

Plaintiff contends that he is engaged as a contractor or subcontractor and, therefore, a user or consumer of tangible personal property. The board of tax administration contends that plaintiff is engaged in making sales at retail.

The pertinent provisions of the sales tax statute (Act No. 167, § 1 [b] Pub. Acts 1933, as amended [Comp. Laws Supp. 1940, § 3663-1 (b), Stat. Ann. 1941 Cum. Supp. § 7.521 (b)]) defining "sale at retail" are as follows:

"The term 'sale at retail' means any transaction by which is transferred for consideration the ownership of tangible personal property, when such transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use other than for consumption or use in industrial processing or agricultural producing, or for any other purpose than for resale in the form of tangible personal property: *Provided, however, That tangible personal property permanently affixed and becoming a structural part of real estate shall not be considered as consumed or used in industrial processing or agricultural producing.*"

The italicized proviso was added by amendment (Act No. 313, Pub. Acts 1939). The effect of this amendment in the instant case will be referred to later.

The parties agree that the question before us for decision is controlled by the construction to be given our opinion in *Acorn Iron Works, Inc.,* v. *State Board of Tax Administration,* 295 Mich. 143 (139 A. L. R. 368). To indicate its connection with the situation in the case at bar, it is necessary to quote at length from the opinion. The State sought to hold the Acorn Iron Works liable for the sales tax on certain structural steel, and Mr. Justice NORTH, writing for the court, said:

"Plaintiff's business involved both the sale and the use of structural steel which it obtained from sources outside of Michigan in the regular course of interstate commerce. Plaintiff also engaged in an activity designated as processing structural steel, such as drilling and fitting the steel for its setting in structures in which it was used; but it is agreed that plaintiff's activities in processing were merely matters of work and labor, and that they did not involve the sale of 'tangible personal property,' and that therefore they were not subject to a sales tax. Plaintiff's business also involved sales of structural steel over the counter to others for use; but in so far as such sales did not contemplate resale but instead were made to the consumer, plaintiff in its brief concedes they were subject to the sales tax.

"Aside from the above, plaintiff's transactions involved in this suit arose from steel construction contracts. These contracts in some instances were with the property owners and in others they were with the general building contractor, plaintiff being a subcontractor. These contracts were of two types. In some plaintiff contracted to furnish for a lump sum the labor and material and in others the consideration was on a time-and-material basis. *In each case plaintiff's undertaking was to furnish the labor and structural steel requisite to the performance of its contract in erecting, repairing or altering a structure in accordance with designated plans and specifications* (italics ours). The question presented for determination is whether such transactions either with the owners of the property or with the building contractor (including subcontractors) were of such a character that they imposed upon plaintiff the obligation to pay a sales tax on the structural steel used.

"Transactions of the character here involved might seem at first blush to have been retail sales of tangible personal property to the ultimate consumer and therefore subject to the sales tax. But careful

consideration of the character of the property sold, the manner of its use incident to the sale, and the time and conditions under which title passed to the purchaser bring the conclusion that these transactions were not subject to the sales tax, and such is the quite uniform holding in courts of last resort.

"At the time of the transactions involved in this litigation as to what constituted a sale, the statute (Comp. Laws Supp. 1940, § 3663–1, Stat. Ann. § 7.521) provided and still provides:

" 'The term "sale at retail" means any transaction by which is transferred for consideration the ownership of tangible personal property, when such transfer is made in the ordinary course of the transferor's business and is made to the transferee for consumption or use other than for consumption or use in industrial processing or agricultural producing, or for any other purpose than for resale in the form of tangible personal property.'

"In passing it should be noted that by amendment (Act No. 313, Pub. Acts 1939) there has been added to the above-quoted provision the following:

" 'Provided, however, That tangible personal property permanently affixed and becoming a structural part of real estate shall not be considered as consumed or used in industrial processing or agricultural producing.'

"The lump sum contract transactions here involved, regardless of whether plaintiff's undertaking was with a construction contractor or with an owner, were for .a stipulated sum covering both time and material and in consideration of which *plaintiff contracted to erect a designated steel structure according to plans and specifications. In plaintiff's process of performance the materials used ceased to be personal property* (italics ours) and become a part of the realty in which form plaintiff obligated itself to deliver the completed contract product to the party with whom it had contracted. Before title to the structural steel passed and before plaintiff's con-

tract was completed the subject matter of the contract had ceased to be 'tangible personal property.' Plaintiff's lump sum construction contract required it to perfect and deliver a structure which conclusively was realty, not personalty. Such a transaction is not subject to the Michigan sales tax imposed on sales of tangible personal property. * * *

"'Under "time-and-material contracts" plaintiff has a written order to proceed with a job on a cost-plus basis, but the method and manner of doing the work is practically the same. In arriving at its figures when computing the charge to be made on a time-and-material contract, plaintiff keeps a record of all materials that go into the job, of all engineering or drafting labor, of all labor entering into the job, and then of the erection labor; and when the job is completed, it adds the sums up, and adds its profit, and considers that the price to the contractor or owner, "whichever happens to be the case for the job."'"

Under those circumstances, this court properly held that Acorn Iron Works, Inc., was not liable for sales tax on the structural steel processed by it and used by it under its contract to erect the structure. It was held liable, however, on that part of its business where it sold structural steel to others for their use in erecting a building, and that fits the situation in the case now before us. Plaintiff in the instant case mixes the component parts into "wet" cement, sells and delivers it to the contractor who uses it in construction work. This is a transfer of personal property, not real estate, and is made to the transferee "for consumption or use" by the transferee. The transfer is subject to the tax.

Appellee's contention in the instant case is based on the reporter's first headnote in *Acorn Iron*

*Works, Inc.,* v. *State Board of Tax Administration, supra.* Standing alone, it supports appellee's contention. It is as follows:

"Corporation which purchased structural steel from sources outside of the State in the regular course of interstate commerce and after drilling and fitting it for use in structures for furnishing which it entered into contracts with contractors or owners was not subject to State sales tax where, upon completion of its contracts, either on a lump sum or labor-and-material basis, the steel became a part of the realty (Act No. 167, Pub. Acts 1933, as amended by Act No. 77, Pub. Acts 1935)."

However inaccurate this may be, standing alone as a statement of law, it must be read in connection with the facts in the case, as shown by the concluding headnote:

"Transactions falling within category of erection contracts, fabrication in conjunction with erection of buildings which become a part of the real estate, are not subject to assessment under the general sales tax act (Act No. 167, Pub. Acts 1933, as amended)."

Another phase of the question now before us requires consideration. The *Acorn Iron Works Case* was decided as applied to business carried on before the 1939 amendment was adopted. In that case, Mr. Justice NORTH calls attention to the 1939 amendment but properly concludes it did not apply to the case then under consideration. This amendment to the definition of "sale at retail" is as follows:

"Provided, however, That tangible personal property permanently affixed and becoming a structural part of real estate shall not be considered as consumed or used in industrial processing or agricultural producing."

It excepts tangible personal property permanently affixed and becoming a structural part of real estate from the exemption from sales tax allowed to tangible personal property used or consumed in industrial processing or agricultural producing. While not stressed in the briefs filed herein, we do not overlook its applicability to transfers arising after the effective date of the amendment.

The trial court held that before title to the wet cement passed it ceased to be tangible personal property and became real estate. We are constrained to reach a contrary conclusion. The transfers are subject to the tax.

The declaratory decree should be set aside for entry of decree in accordance herewith. No costs awarded, a question of public necessity being involved.

NORTH, J., concurred with BOYLES, J.

BUSHNELL, J. I am unable to agree with the opinion proposed by Mr. Justice BOYLES, in which he distinguishes the case of *Acorn Iron Works, Inc.,* v. *State Board of Tax Administration,* 295 Mich. 143 (139 A. L. R. 368). I cannot distinguish the stipulated facts in this case from the circumstances surrounding the transactions involved in the *Acorn Case.*

The transit-mixed concrete involved in plaintiff's operations when poured in place ceased to be personal property and became a part of the realty, and is, therefore, not subject to the tax and is not affected by the amendment. See Act No. 167, Pub. Acts 1933, as subsequently amended by Act No. 313, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 3663–1, Stat. Ann. 1940 Cum. Supp. § 7.521).

I think the *Acorn Case* is controlling and decisive of the issues presented in this record and that the

facts fall squarely within the above-quoted proviso of the statute. The decree below should be affirmed. It is so ordered, but without costs.

Chandler, C. J., and Starr, Wiest, Butzel, and Sharpe, JJ., concurred with Bushnell, J.