**VOLK, Appellant, v. EVATT, Tax Commr., Appellee.**

Board of Tax Appeals.

No. 5157.   Decided June 2, 1943.

Ben F. Levinson, Columbus and Nelson N. Moss, Cleveland, for appellant.

Hon. Thomas J. Herbert, Atty. Gen., Columbus and A. A. Cartwright, Columbus, Special Counsel for Atty. Gen., for appellee.

### ENTRY

This cause and matter came on for hearing before the Board of Tax Appeals upon an appeal filed herein by the appellant, above named, from an order made by the tax commissioner confirming a deficiency sales tax assessment theretofore made by the tax commissioner against the appellant. Said cause was submitted to the Board of Tax Appeals upon said appeal, upon a transcript of the proceedings of the tax commissioner relating to said sales tax assessment, upon a stipulation of the facts entered into by counsel on the hearing of the case and upon other evidence adduced at such hearing, and upon the arguments and briefs of counsel. The cause

was likewise submitted to the Board upon a motion filed by the appellant for an order of the Board sustaining said appeal and setting aside said deficiency tax assessment for the stated reason "that §5546-1 GC, and Rules Nos. 25, 27 and 90 of the Tax Commission of Ohio are in conflict with and prohibited by **Article II, Sec. 26, Article XII, Sec. 2** and **Article XII, Sec. 5** of the **Constitution** of the State of Ohio, and are in conflict with and prohibited by Section I of the 14th Amendment to the Constitution of the United States, which provides that no State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws".

The Board of Tax Appeals is unable to perceive any merit in appellant's motion on the grounds therein stated, and said motion is hereby overruled.

The Board of Tax Appeals upon further consideration of the case as the same was submitted to it, finds that on or about August 29, 1941, the tax commissioner, acting through his agents and representatives in the Sales Tax Division of the Department of Taxation, made an audit of the business of the appellant who, as an individual, was doing business under the name of Volk's Sheet Metal Company with his office and place of business in the city of Lakewood, Ohio. Pursuant to this audit, which covered the period of time from January 1, 1938, to June 30, 1941, a deficiency sales tax assessment in the sum of $590.13, together with an added penalty of $88.52 amounting in all to the sum of $678.65, was made against the appellant as a purchaser or "consumer", on and with respect to items of tangible personal property, to wit, furnace parts, connections, equipment and other materials which were sold to appellant from time to time during the period of said audit, and which were used by him in his business as a subcontractor in assembling and installing such items of property as completed heating units in newly constructed dwellings and other buildings under contracts between himself as such subcontractor and general contractors engaged in the construction and erection of such buildings; and that such heating units were installed by the appellant under lump sum contracts which did not by their terms provide for a separation of the charge for labor and other services from the charge for materials necessary in fulfilling such contracts. It further appears from the facts as they were stipulated by the parties on the hearing of this case, that the appellant did not sell at retail any of the items of personal property purchased by him as aforesaid, but that all of such items were used by him in the assembly and installation of heating units under contract

in manner as above stated; which heating units, upon the installation thereof, became a part of the several buildings in which they were installed and, as stipulated by the parties herein, became a part of the real property comprising such several buildings and the lots or lands upon which the same were located. See **Holland Furnace Company v The Trumbull Savings and Loan Co., 135 Oh St 48.**

No claim is made by appellant that any sales taxes were paid on the sales to him of such items of personal property which he had purchased for the purposes above stated; nor is any question here made as to the correctness of the amount of this deficiency assessment and penalty, if the several sales to appellant of the items of property here in question for the purposes above stated were taxable sales under the provisions of §5546-1 et seq., GC.

The question as to whether the sales made to appellant of the items of tangible personal property, as aforesaid, which were used by him in his business as a subcontractor for the purposes hereinbefore mentioned, were "retail sales" and taxable against him as a purchaser or "consumer", requires a consideration of the pertinent provisions of §§5546-1 and 5546-2 GC, and of other related provisions of the Sales Tax Act in the light of general principles of law applicable in cases of this kind. **Sec. 5546-1 GC,** as the same read at the time of the sales here in question, provided: " 'Sale' and 'selling' include all transactions whereby title or possession, or both, of tangible personal property, is or is to be transferred, or a license to use or consume tangible personal property is granted, for a consideration in any manner, whether absolutely or conditionally, whether for a price or rental, in money or by exchange or barter, or by any means whatsoever." As a matter which is pertinent, perhaps, in the consideration of the question here presented, it is noted that this section further provides as follows: "A construction contract, pursuant to which tangible personal property is or is to be incorporated into a structure or improvement on and becoming a part of real property shall, if the consideration for such incorporation is agreed upon, charged or paid separately from the consideration for the performance of the other obligations of such construction contract, constitute a sale of such tangible personal property for the purpose of this act." By this section the term "vendor" is defined to mean the person by whom the transfer effected by a sale is or is to be made; and by this section the term "consumer" is defined to mean the person to whom the transfer effected by a sale is or is to be made.

Sec. 5546-2 GC, provides that for the purposes therein stated, and at the graduated rates therein specified, "An excise tax is hereby levied on each retail sale made in this state of tangible personal property on and after the first day of January, 1935, with the exceptions hereinafter mentioned." It is thus seen that under the provisions of this section, the taxes therein provided for are not levied on all sales but only on such as are "retail sales" under the definitive provisions set out in §5546-1 GC. By this section, retail sales are defined as follows: " 'Retail sale' and 'sales at retail' include all sales excepting those in which the purpose of the consumer is (a) to resell the thing transferred in the form in which the same is, or is to be, received by him; or (b) to incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, refining, mining, production of crude oil and natural gas, farming, horticulture, or floriculture * * *. In this connection it is proper to note that in and by §5546-2 GC, it is further provided that "for the purpose of the proper administration of this act and to prevent the evasion of the tax hereby levied, it shall be presumed that all sales made in this state are subject to the tax hereby levied until the contrary is established". It is likewise pertinent to note that subject to certain exceptions not here material, §5546-3 GC, provides that "the tax imposed by §§5546-2 GC shall be paid by the consumer to the vendor in every instance, and it shall be the duty of each vendor to collect from the consumer the full and exact amount of the tax payable in respect of each taxable sale, and to evidence the payment of the tax in each case by canceling prepaid tax receipts, equal in face value to the amount thereof".

Since, under the definitive provisions of §5546-1 GC, above quoted, the term "sale", as employed in the Sales Tax Act, is not limited to a sale to the purchaser or "consumer" for his own use or consumption, it follows that sales of furnace parts, connections, and other equipment and materials to the appellant by manufacturers or other vendors of such items of tangible personal property were "sales" of such property within the meaning of the Sales Tax Act. And it likewise follows that such sales were "retail sales" and were taxable as such under the provisions of §5546-2 GC, unless such sales were taken out of the definition of the term "retail sale" by one or more of the exceptions in the definitive provisions of §5546-1

GC, above quoted, relating to the meaning of the term "retail sale" as the same is used in the Sales Tax Act. As to this, it is noted that so far as the question here presented is concerned, the term "retail sale" as used in this Act, includes all sales excepting those in which the purpose of the consumer (in this case the appellant as subcontractor) is either "(a) to sell the thing transferred in the form in which the same is, or is to be, received by him; or (b) to incorporate the thing transferred as a material or a part, into tangible personal property to be produced for sale by manufacturing, assembling, processing or refining, or to use or consume the thing transferred directly in the production of tangible personal property for sale by manufacturing, processing, (or) refining."

It is quite apparent from the admitted facts in this case that the purpose of the appellant as a subcontractor in purchasing the items of personal property here in question from manufacturers or other vendors thereof, was not to sell such property or any part thereof to the general contractor or to the owner of the building under construction, in the form in which such items of personal property were received by the appellant as such subcontractor. The purpose of the appellant in purchasing such items of personal property was to use the same as a subcontractor in the assembly and installation of a completed heating unit in a residence or other building under construction, and to turn the same over as a completed unit to the general contractor or owner, as provided for in his contract with the general contractor. It follows, therefore, that the sales to the appellant of the above noted items of personal property which were used by him for the purposes above stated, were not taken out of the definition of the term "retail sale" under the first exception noted in the provisions of §5546-1 GC, defining said term.

Referring to the second exception in the above quoted provisions of §5546-1 GC, defining the term "retail sale" it may be said on the admitted facts of this case, giving effect to established principles of law applicable in cases of this kind, that the purpose of the appellant as the purchaser and "consumer" of the items of personal property here in question, was not to incorporate such items of property so sold and transferred to him, as a material or a part, "into tangible personal property to be produced for sale" by manufacturing, assembling, processing or refining; and neither was it the purpose of the appellant to use or consume such items so sold and transferred to him directly "in the production of tangible personal property for sale" by manufacturing, processing

or refining. As above indicated, it was the sole purpose of the appellant in the purchase of this property to assemble and install the same as a completed heating unit in the building pursuant to the terms of his contract with the general contractor, and to turn such completed heating unit over to the general contractor or to the owner as a part of the building and as real property. In this situation as to the facts in this case, we are of the opinion that the transaction between the appellant as subcontractor and the general contractor by which the completed heating unit was installed in the building, was not a sale of such completed heating unit as such term "sale" is understood either at the common law or under the definition of the term in the Sales Tax Act. Touching this question the following is said in 23 R.C.L., p. 1233, sec. 49 (Sales); "A contract to do certain work on a building and to supply the requisite material is not a contract of sale of such material within the Statute of Frauds; so a contract to furnish material, and, after performing labor thereon, attach it to the realty, as a part of the building in the course of construction, is not a sale of goods or chattels." See Brown etc. Co. v Wunder, 54 Minn. 450. In the case of York Heating and Ventilating Co. v Flannery, 87 Pa. Super. 19, the court speaking of the installation of a blower and heating system under a contract providing therefor, said: "The contract in suit in no sense was a contract of sale. It was a construction contract. * * * It would be just as proper to call a contract for the construction of a building, a sale of the stone, brick, cement, wood, etc., which enter into the erection of the building." Other cases supporting this view are: Chandler v De-Graff, 22 Minn, 471; Walstron v Oliver-Watts Construction Co., 161 Ala. 608; Courtright v Stewart, 19th Barb. (N.Y.), 455; Steiger Terra Cotta & Pottery Works v City of Sonoma, 9 Calif. App., 698; Flynn v Dougherty, 91 Calif. 669; Raff Co. v Murphy, 110 Conn. 234, 147 Atl. 709.

Although the meaning of the term "sale" as the same is used in the Sales Tax Act, is in some respects broader than that ascribed to the term under the common law and under the Uniform Sales Act, the provisions of the Sales Tax Act are in this respect to be construed in the light of applicable common law principles, conformable to the rule with respect to the construction of all statutes which are in any respect in derogation of the common law. See 37 O. Jur., p.p. 729, 730, sec. 409 (Statutes); **Felix v Griffith, 56 Oh St 39; Palace Hotel v Medart, 87 Oh St 130, 138; Krause v Morgan, 53 Oh St 26, 42.** In any event as to the application of this rule, the weight of

authority, as indicated by the decisions of the courts constru-
ing the sales tax laws of the several states where such laws
are in effect, is in line with the common law principle or rule
above noted, and supports the view that the installation of
heating equipment or other property under a lump sum con-
tract in and by which such property becomes a part of the
building as real property, does not constitute a sale of such
property by the contractor or subcontractor furnishing and
installing the same. See Atlas Supply Co. v Maxwell, 212 N. C.
624, 194 S. E. 117; State v Christhilf, 170 Md. 586, 186 Atl. 456;
St. Louis v Smith, 342 Mo. 317, 114 S. W. (2d) 1017; State v
J. Watts Kearny & Sons, 181 La. 554, 160 So. 77; Albuquerque
Lumber Co. v Bureau of Revenue, 42 N. M. 58, 75 Pac. (2d)
354; Utah Concrete Products Corp. v State Tax Commission,
101 Utah, 513, 125 Pac. (2d) 408; Lone Star Cement Corp. v State
Tax Commission, 234 Ala. 465; 175 So. 399; Acorn Iron Works
v State Board of Tax Administration, 295 Mich. 143, 294 N. W.
126; **Wellnitz v Evatt, 19 O.O. 330.** Moreover, under the pro-
visions of §5546-1 GC, above quoted, the transaction whereby
heating equipment or other tangible personal property is in-
corporated into a building as a part thereof and as real pro-
perty under a construction contract providing therefor, is
not a sale of such heating equipment or other tangible per-
sonal property so incorporated unless in such contract
there is a separate statement of the consideration to be paid
for work and labor in making such installation and likewise a
separate statement of the consideration to be paid for such
tangible personal property as materials under the contract.

The views indicated by the authorities and other consid-
erations above noted lead to the conclusion that the several
sales of the items of personal property here in question by
manufacturers or other vendors to the appellant for the pur-
poses above stated, were not excepted by the definitive pro-
visions of §5346-1 GC, from the character of retail sales which
were taxable as such under the provisions of §5546-2 GC. And,
in accordance with this conclusion, we are required to hold
that the tax commissioner did not err in assessing taxes on
the several sales of this property to the appellant as purchas-
er and "consumer", or in making said deficiency sales tax as-
sessment against the appellant under the authority conferred
upon the tax commissioner by the provisions of §5546-9a GC.

In the considerations of the questions presented in this
case we are not unmindful of the decision in the case of The
Bradley Supply Co. v Ames, Director of Finance, 359 Ill. 162,
194 N. E. 272. In this case it was held by the Supreme Court

of Illinois that the sale of plumbing and heating supplies to contractors for installation by them in buildings under contracts with the owners thereof, was a sale of such property for resale and as such was not subject to the tax provided by the Retailers' Occupation Tax Law of that state. The tax provided for by the law of the State of Illinois, under consideration in the Bradley Supply Company case, is an occupational tax imposed upon persons engaged in the business of selling tangible personal property at retail in the state; which tax is measured by the gross receipts from such sales in the state in the course of business done by such persons. The term "sale at retail", as used in the Act under consideration in the Bradley Supply Company case, is defined therein as follows: " 'Sale at retail' means any transfer of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration." In the opinion of the court in this case it was said that since the contractor did not purchase the plumbing supplies there in question "for his use or consumption", the transaction whereby such property was sold to him did not constitute a "sale at retail", and was not taxable under said Act; but that the transaction whereby the plumbing supplies were transferred by the contractor to the owner of the building was a "sale at retail" and taxable as such, although the title to such plumbing supplies passed to the owner of the building as a part thereof and as real property. Further, the court in its opinion in this case, after noting and approving the general rule that the acquisition of tangible personal property to a building as real property under a labor and material contract providing therefor is not a sale as that term is understood at common law or under the Uniform Sales Law, said "The question before us is not whether the transaction between the contractors and owners of land is a sale of personalty as that term is defined at common law in the decisions of courts or in the Uniform Sales Act, but whether it is a transfer of tangible personal property to the purchaser, for use or consumption and not for resale within the meaning of the Retailers' Occupation Tax Act. By defining a 'sale at retail' as 'any transfer of the ownership of, or title to, tangible personal property', it is apparent that the legislature was not contemplating that only 'sales' of personalty, as generally defined, should come within the purview of the Act. The definition is broad enough to cover the transfer of title made by a contractor who attaches tangible personal property to real estate in accordance with a contract.

144

It is clearly a transfer of title for a valuable consideration." Aside from the obvious fact that the Bradley Supply Company case did not arise under a sales tax law as such, and aside from the fact that this case under the law of the State of Illinois there under consideration, is distinguishable from the case at hand under the law of this state in this, that under the Sales Tax Act of this state there is no requirement that in order to constitute a "sale" or "retail sale" of personal property, such property be sold to a purchaser for his "use and consumption", as is the case under the Illinois law, and in this, that under the law of this state, as above noted, a construction contract for the installation of tangible personal property in a building as real property is not a sale of such property unless such contract provides for a separate statement of the consideration with respect to labor and material, it is to be noted that the Bradley Supply Company case has not received any considerable approval in the decisions of the courts of other states. And in this situation we are not inclined to give any effect to the decision in the Bradley Supply Company case or to other Illinois cases following it, with respect to the question presented on the facts of the case now before us on this appeal.

On the considerations above noted and discussed, the Board finds that the tax commissioner did not err in making and confirming the deficiency sales tax assessment complained of in this appeal; and the same is hereby affirmed.